PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

WILLIAM S. WHITE,

*Defendant-Appellant.*

No. 09-4114

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
Robert E. Payne, Senior District Judge.
(3:08-cr-00338-REP-1)

Argued: January 27, 2010

Decided: June 1, 2010

Before TRAXLER, Chief Judge, AGEE, Circuit Judge, and
Catherine C. BLAKE, United States District Judge for the
District of Maryland, sitting by designation.

Reversed and vacated by published opinion. Judge Agee
wrote the opinion, in which Chief Judge Traxler and Judge
Blake joined.

## COUNSEL

**ARGUED**: Eric Hans Kirchman, KIRCHMAN & KIRCH-
MAN, Washington, D.C., for Appellant. Richard Daniel

Cooke, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee. **ON BRIEF:** Kenneth M. Robinson, Washington, D.C., for Appellant. Dana J. Boente, United States Attorney, Alexandria, Virginia, Kevin C. Nunnally, Special Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee.

---

**OPINION**

AGEE, Circuit Judge:

William White ("White") was convicted in the United States District Court for the Eastern District of Virginia for violating 18 U.S.C. § 922(g)(9) (2000), possessing a firearm after having "been convicted in any court of a misdemeanor crime of domestic violence." On appeal, White argues that his predicate conviction under Virginia law cannot be considered a "misdemeanor crime of domestic violence" as defined in 18 U.S.C. § 921(a)(33)(A) (2000 & Supp. 2009). For the reasons set forth by the United States Supreme Court in *Johnson v. United States*, __ U.S. __, 130 S. Ct. 1265 (2010), *inter alia*, we agree with White, reverse the judgment of the district court and vacate White's conviction.

I.

In 2004, White pled guilty and was convicted in the General District Court of Henrico County, Virginia, of violating VA CODE ANN. § 18.2-57.2 for "assault and battery against a family or household member," which is a Class 1 misdemeanor under Virginia law.[1] Because White was a first-time offender, however, the court proceeded under VA CODE

---

[1]Punishment for conviction of a Class 1 misdemeanor is limited to "confinement in jail for not more than twelve months and a fine of not more than $2,500, either or both." VA CODE ANN. § 18.2-11 (West 2009).

ANN. § 18.2-57.3, which allowed the court to defer entering judgment and place White on certain terms and conditions. Accordingly, the general district court ordered that White complete an anger-management course and avoid contact with the victim or her family members. When White failed to complete the course, he was arrested, found guilty of the original offense under VA CODE ANN. § 18.2-57.2 and sentenced to twelve months in jail, all suspended.[2]

General district courts in Virginia are courts not of record, VA CODE ANN. § 16.1-69.5, so the only record of the charges, trial, conviction and sentence is the executed warrant of arrest as executed by the trial judge. As to the facts of White's offense, all that is known is the date, August 25, 2004, and that the charge is "assault and batter[y] of [victim] (child in common), who is a family or household member." J.A. 38.

In 2008, White was indicted in the Eastern District of Virginia under § 922(g)(9) for being in possession of a firearm after having "been convicted of a misdemeanor crime of domestic violence." J.A. 7. White and the Government stipulated that the only predicate conviction which could be considered a misdemeanor crime of domestic violence was the Henrico County assault and battery conviction, and that White did possess a firearm after that conviction. White did not contest in the district court, nor does he on appeal, that the victim of the assault and battery was a person who fit the statutory definition in § 921(a)(33)(A)(ii).

White filed a motion to dismiss the indictment arguing that his Virginia conviction was "not a 'misdemeanor crime of

---

[2]In addition to his conviction for violation of VA CODE ANN. § 18.2-57.2, White was found guilty of contempt for violating the general district court's previous order. On the contempt charge he was sentenced to thirty days imprisonment with twenty-six days suspended and again ordered to complete anger-management.

domestic violence,'" which, for purposes of § 922(g)(9) is defined by § 921(a)(33)(A). He contended that as Virginia uses the common law definition of battery, the elements of that crime could not meet the statutory definition of "misdemeanor crime of domestic violence," which requires the offense to have "as an element, the use or attempted use of physical force." § 921(a)(33)(A)(ii) (West 2000 & Supp. 2009). White's counsel argued that "[a] battery is any intentional touching no matter how slight it is. I wouldn't suggest that would be physical force." J.A. 62.

The district court denied the motion to dismiss because it perceived "the Virginia interpretations of the elemental requirements of assault and battery under Virginia law in 18.2-57.2 and the attempted use of force under federal law [as] essentially the same." J.A. 71.

White subsequently entered a conditional guilty plea to the firearms charge, which reserved his right to seek appellate review of the denial of his motion to dismiss. The district court sentenced White to 57 months of imprisonment. He timely appeals the judgment of the district court and we have jurisdiction under 28 U.S.C. § 1291 (2006).

## II.

## A.

Section 922(g)(9) makes it a felony under federal law to possess a firearm after having been convicted of a "misdemeanor crime of domestic violence," which § 921(a)(33)(A) defines as "a misdemeanor under Federal, State, or Tribal law" that

> has, *as an element*, the use or attempted use of *physical force*, or the threatened use of a deadly weapon, committed by a current or former spouse, parent, or guardian of the victim, by a person with whom the

victim shares a child in common, by a person who is cohabiting with or has cohabited with the victim as a spouse, parent, or guardian, or by a person similarly situated to a spouse, parent, or guardian of the victim.

§ 921(a)(33)(A)(i)-(ii) (emphasis added).

The issue to be decided in this case is whether the "use . . . of physical force," as that term is used in § 921(a)(33)(A)(ii), is an element of the criminal offense of assault and battery under Virginia law.[3] "Physical force" is not defined in § 921 or any other relevant federal statute.

White argues that a person can be convicted of assault and battery in Virginia without the use of "physical force." This is because, White contends, Virginia retains the common law definition of battery, which includes even the slightest offensive touching as an act of battery. According to White, a mere offensive touching is not synonymous with "physical force", at least for purposes of an act covered by § 922(g)(9).

The Government admits that "Virginia, like roughly half the States, follows the traditional common-law approach to battery and permits a conviction for battery where there is either bodily injury or an offensive touching." Br. of Appellee at 11. However, the Government asserts that an assault and battery conviction under VA CODE ANN. § 18.2-57.2 neces-

---

[3]Assault and battery against a family or household member is addressed in VA CODE ANN. § 18.2-57.2, the statute under which White was convicted in the Henrico County General District Court. An assault and battery under § 18.2-57.2 is a subset of the generic offense of assault and battery under VA CODE ANN. § 18.2-57 and is distinguished only by the victim of the crime. Other than the identity of the victim, there is no question that the elements of assault and battery under either of the Virginia statutes are identical. Section 18.2-57.2 provides in pertinent part that "[a]ny person who commits an assault and battery against a family or household member is guilty of a Class 1 misdemeanor."

sarily encompasses the application of "physical force" because the applicable definitional statute, § 921(a)(33)(A), contains no minimal limit on the amount of force required. In the Government's view,

> [a]lthough Virginia law does not require proof that the skin was penetrated or that some grievous injury occurred, nothing in the plain meaning of "physical force" requires such consequences. The definition of "physical force" requires no more than that force applied to the victim's body, and that standard is met by a touching of the victim's body that is done willfully or in anger.

*Id.* at 12. In other words, the Government's position is that any intentional physical contact with a victim's person, regardless how *de minimis*, constitutes "physical force" as that term is used in § 921(a)(33)(A)(ii). According to the Government, any and every battery conviction under VA CODE ANN. § 18.2-57.2 would be a misdemeanor crime of domestic violence for purposes of felony status under § 922(g)(9).

### B.

In Virginia, statutory assault and battery offenses, including those under VA CODE ANN. § 18.2-57.2, incorporate the common law crime of "assault and battery" without statutory modification or restriction. *Clark v. Commonwealth*, ___ S.E.2d ___, 2010 WL 1490006, at *3 (Va. Apr. 15, 2010) (explaining that "because the elements of assault are not statutorily defined, this Court must apply the common law definition"); *Montague v. Commonwealth*, 684 S.E.2d 583, 588 (Va. 2009) (affirming conviction under VA CODE ANN. § 18.2-57 and noting that "[a]ssault and battery are common law crimes"). It is clear from longstanding Virginia jurisprudence that battery may be accomplished with the slightest touch and no physical injury is required. In 1867 Virginia's highest court explained that

[a]n assault is any attempt or offer with force or violence to do a corporeal hurt to another, whether from malice or wantonness, as by striking at him in a threatening or insulting manner, or with such other circumstances as denote at the time an intention, coupled with a present ability, of actual violence against his person, as by pointing a weapon at him when he is within reach of it. When the injury is actually inflicted it amounts to a battery, which includes an assault, and this, *however small it may be, as by spitting in a man's face, or in any way touching him in anger*, without lawful provocation.

*Hardy v. Commonwealth*, 17 Gratt. 592 at \*6 (Va. 1867) (emphasis added). "A battery is the unlawful touching of the person of another by the aggressor himself, or by some substance set in motion by him" and "[t]he law cannot draw the line between different degrees of force, and therefore totally *prohibits the first and lowest stage of it*." *Lynch v. Commonwealth*, 109 S.E. 427, 428 (Va. 1921) (citation omitted) (emphasis added). "The law is so jealous of the sanctity of the person that the slightest touching of another, or of his clothes, or cane, or anything else attached to his person, if done in a rude, insolent, or angry manner, constitutes a battery for which the law affords redress." *Crosswhite v. Barnes*, 124 S.E. 242, 244 (Va. 1924); *see also Jones v. Commonwealth*, 36 S.E.2d 571, 572 (Va. 1946) ("Battery is the *actual infliction of corporal hurt* on another (e.g., the *least touching* of another's person), *wilfully or in anger*, whether by the party's own hand, or by some means set in motion by him."); *Perkins v. Commonwealth*, 523 S.E.2d 512, 513 (Va. Ct. App. 2000) ("Assault and battery is 'the least touching of another, wilfully or in anger.'") (quoting Roger D. Groot, Criminal Offenses and Defenses in Virginia 29 (4th. ed. 1998)); *Gnadt v. Commonwealth*, 497 S.E.2d 887, 888 (Va. Ct. App. 1998) ("An assault and battery is an unlawful touching of another. It is not necessary that the touching result in injury to the per-

son. Whether a touching is a battery depends on the intent of the actor, not on the force applied.").

With this clear view of Virginia law defining the elements of assault and battery in mind, we must decide whether "physical force" in § 921(a)(33)(A)(ii) encompasses any application of force. That is, does the statutory meaning of "physical force" include the slightest offensive touching, as the Government contends, so that any Virginia battery conviction involving a statutorily defined victim, is a "misdemeanor crime of domestic violence?" Or, as White contends, does "physical force" in the federal statute require a greater application of force than merely an intentional touching that causes no injury? If the latter is the case, then conviction of assault and battery in Virginia would not, in and of itself, be a "misdemeanor crime of domestic violence" for § 922(g)(9) purposes.

## C.

This Court has not previously considered whether a conviction for assault and battery under Virginia law constitutes a "misdemeanor crime of domestic violence" as defined in § 921(a)(33)(A). Although the district court did not indicate it examined the decisions of other courts, a review of opinions by the circuit courts of appeal considering the assault and battery statutes of other states reflect a significant split of authority. Although we believe the Supreme Court's recent decision in *Johnson* resolves the issue before us, the conflicting decisions of our sister circuits place the issue in perspective.

The courts of appeal for the First, Eighth and Eleventh Circuits have concluded that the "touching" element of common law battery, no matter how slight, falls within the plain meaning of the statutory term "physical force" as intended by Congress. *See United States v. Griffith*, 455 F.3d 1339 (11th Cir. 2006); *United States v. Nason*, 269 F.3d 10 (1st Cir. 2001); *United States v. Smith*, 171 F.3d 617 (8th Cir. 1999). Reviewing the Maine assault and battery statute, the First Circuit

stated in *Nason* that "[t]his means that we must read the unqualified use of the term 'physical force' in section 922(g)(9) as a clear signal of Congress's intent that section 922(g)(9) encompass misdemeanor crimes involving all types of physical force, regardless of whether they could reasonably be expected to cause bodily injury." 269 F.3d at 16–17. To do otherwise, the Eleventh Circuit indicated in *Griffith*, would require "effectively inserting the word 'violent' into the operative definition contained in § 921(a)(33)(A)(ii). That modification may be an appealing improvement in some eyes, but we are not licensed to practice statutory remodeling." 455 F.3d at 1344.

Both the *Nason* and *Griffith* Courts pointed to the use of language modifying the term "physical force" in the statutory subsection immediately preceding subsection 922(g)(9) as a basis for their decisions.

Section 922(g)(8)(C)(ii), which immediately precedes § 922(g)(9), is part of a provision restricting firearm possession by anyone subject to a court order that prohibits the "use, attempted use, or threatened use of physical force . . . that would reasonably be expected to cause bodily injury." 18 U.S.C. § 922(g)(8)(C)(ii). The significance of the limiting language narrowing the scope of that provision to force "that would reasonably be expected to cause bodily injury" is that Congress put the limitation into the last subsection that precedes § 922(g)(9), but not into § 922(g)(9) itself or into the definition of "crime of domestic violence" that is contained in § 921(a)(33)(A)(ii).

"It is well settled that where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion."

> *Duncan v. Walker*, 533 U.S. 167, 173 (2001) (internal citation, quotation marks, and alteration omitted). If Congress had wanted to limit the physical force requirement in § 922(g)(9), it could have done so, as it did in the last clause of the preceding paragraph of the same subsection, see § 922(g)(8)(C)(ii), and with the same limiting language or something similar to it, but that is not what Congress did.

*Id.* at 1342.

In contrast, the courts of appeal for the Seventh, Ninth and Tenth Circuits have concluded the "touching" element of common law battery is not "physical force" as contemplated in § 921(a)(33)(A) or similar statutes. *See United States v. Hays*, 526 F.3d 674 (10th Cir. 2008); *United States v. Belless*, 338 F.3d 1063 (9th Cir. 2003); *Flores v. Ashcroft*, 350 F.3d 666 (7th Cir. 2003). In *Flores*, the Seventh Circuit examined whether a "crime of domestic violence" under the Immigration and Nationality Act included the Indiana battery statute which defined an offense as "any touching in a rude, insolent, or angry manner." 350 F.3d at 669. This inquiry mirrors that under § 922(g)(9) because the "crime of domestic violence" under 8 U.S.C. § 1227(a)(2)(E) was defined in *Flores* by reference to 18 U.S.C. § 16, which provides that "[t]he term 'crime of violence' means", like § 921(a)(33)(A), "an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another." *Id.* (quotation omitted). The court concluded "physical force" in a "crime of domestic violence" did not include rude touching as a battery under Indiana law.

> Section 16(a) refers to the "use of physical force". Every battery entails a touch, and it is impossible to touch someone without applying *some* force, if only a smidgeon. Does it follow that every battery comes within § 16(a)? No, it does not. Every battery involves "force" in the sense of physics or engineer-

ing, where "force" means the acceleration of mass.
. . .

To avoid collapsing the distinction between vio-
lent and non-violent offenses, we must treat the word
"force" as having a meaning in the legal community
that differs from its meaning in the physics commu-
nity. The way to do this is to insist that the force be
violent in nature—the sort that is intended to cause
bodily injury, or at a minimum likely to do so. We
have already drawn just that line. *See Solorzano-
Patlan v. INS*, 207 F.3d 869, 875 n. 10 (7th Cir.
2000); *Xiong v. INS*, 173 F.3d 601, 604-05 (7th Cir.
1999). Otherwise "physical force against" and "phys-
ical contact with" would end up meaning the same
thing, even though these senses are distinct in law.

*Id.* at 672.

In *Hays*, the Tenth Circuit reached the same conclusion in
determining that a conviction under the Wyoming battery stat-
ute was not a "misdemeanor crime of domestic violence" for
§ 922(g)(9) purposes. Wyoming utilizes the common law def-
inition of battery, so touching "another in a rude, insolent or
angry manner" violates the statute. 526 F.3d at 675 (citing
WYO. STAT. ANN. § 6-2-501(b)). The Tenth Circuit con-
cluded that such a battery was not "physical force" within the
meaning of § 921(a)(33) for reasons similar to those
expressed in *Flores*.

[W]e conclude that the first prong of the Wyoming
battery statute does not categorically satisfy the defi-
nition of "misdemeanor crime of domestic violence"
found in § 921(a)(33)(A) because it "embraces con-
duct that does not include 'use or attempted use of
physical force.'" *Belless*, 338 F.3d at 1067. Indeed,
one can think of any number of "touchings" that
might be considered "rude" or "insolent" in a domes-

tic setting but would not rise to the level of physical force discussed above. For example, in the midst of an argument, a wife might angrily point her finger at her husband and he, in response, might swat it away with his hand. This touch might very well be considered "rude" or "insolent" in the context of a vehement verbal argument, but it does not entail "use of physical force" in anything other than an exceedingly technical and scientific way. Similarly, "indirect" contact such as throwing "a snowball, spitball, or paper airplane," or water at one's spouse or domestic partner, without causing harm or injury, could be considered rude or insolent touching under the Wyoming statute. *See Flores*, 350 F.3d at 669. We doubt this kind of contact was the type of crime of "domestic violence" that Congress had in mind when it passed § 922(g)(9).

526 F.3d at 679.

The resolution of which competing analysis of the term "physical force" is controlling has been, we believe, authoritatively determined by the Supreme Court in *Johnson*. We now turn to that opinion and its impact on the case at bar.

### D.

The defendant in *Johnson* was convicted as a felon in possession of ammunition under § 922(g)(1) and the Government sought to impose an enhanced penalty at sentencing pursuant to the Armed Career Criminal Act, 18 U.S.C. § 924(e)(1) (2000 & Supp. 2009) ("ACCA"). Under the ACCA, Johnson could receive the enhanced penalty if he had three previous convictions for a "violent felony," which is defined as "'any crime punishable by imprisonment for a term exceeding one year . . that— (i) has *as an element* the use, attempted use, or threatened use of *physical* force against the person of another." § 924(e)(2)(B) (2000) (emphasis added).

At issue was Johnson's Florida conviction for misdemeanor battery under Fla. Stat. § 784.03(1)(b). The Government contended the Florida battery conviction was Johnson's third "violent felony." Johnson argued that the Florida conviction did not qualify as a "violent felony" because battery in Florida was common law battery and did not encompass "physical force" as an element of that crime. The Supreme Court explained that

> Under § 784.03(1)(a), a battery occurs when a person either "1. [a]ctually and intentionally touches or strikes another person against the will of the other," or "2. [i]ntentionally causes bodily harm to another person." Because the elements of the offense are disjunctive, the prosecution can prove a battery in one of three ways. *State v. Hearns*, 961 So.2d 211, 218 (Fla. 2007). It can prove that the defendant "[i]ntentionally caus[ed] bodily harm," that he "intentionally str[uck]" the victim, or that he merely "[a]ctually and intentionally touche[d]" the victim.
>
> Since nothing in the record of Johnson's 2003 battery conviction permitted the District Court to conclude that it rested upon anything more than the least of these acts, *see Shepard v. United States*, 544 U.S. 13, 26 (2005) (plurality opinion), his conviction was a predicate conviction for a "violent felony" under the Armed Career Criminal Act only if "[a]ctually and intentionally touch[ing]" another person constitutes the use of "physical force" within the meaning of § 924(e)(2)(B)(i). The District Court concluded that it does, and accordingly sentenced Johnson under § 924(e)(1) to a prison term of 15 years and 5 months.

130 S. Ct. at 1269.

Continuing, the Court then explained that

[t]he meaning of "physical force" in § 924(e)(2)(B)(i) is a question of federal law, not state law. And in answering that question we are not bound by a state court's interpretation of a similar-or even identical-state statute.

We are, however, bound by the Florida Supreme Court's interpretation of state law, including its determination of the elements of Fla. Stat. § 784.03(2). *See Johnson v. Fankell*, 520 U.S. 911, 916 (1997). The Florida Supreme Court has held that the element of "actually and intentionally touching" under Florida's battery law is satisfied by any intentional physical contact, "no matter how slight." *Hearns*, 961 So.2d, at 218. The most "nominal contact," such as a "ta[p] . . . on the shoulder without consent," *id.*, at 219, establishes a violation. We apply "th[is] substantive elemen[t] of the criminal offense," *Jackson v. Virginia*, 443 U.S. 307, 324, n. 16 (1979), in determining whether a felony conviction for battery under Fla. Stat. § 784.03(2) meets the definition of "violent felony" in 18 U.S.C. § 924(e)(2)(B)(i).

*Id.* at 1269–70.

With the elements of battery in Florida established, the Supreme Court proceeded to define the term "physical force" by noting that the term "force" has "specialized legal usage . . . [such as] describing one of the elements of the common-law crime of battery." *Id.* at 1270. However, the Court rejected application of that "common-law term of art" because it would be improper in the context of § 924(e)(2)(B) — "[h]ere we are interpreting the phrase 'physical force' as used in defining not the crime of battery, but rather the statutory category of 'violent felon[ies].'" *Id.* The Court concluded that "in the context of a statutory definition of '*violent* felony,' the phrase 'physical force' means *violent* force-that is, force capa-

ble of causing physical pain or injury to another person." *Id.*
at 1271. In other words, the Court rejected the Government's
argument that *de minimis* force, as in an offensive touching
without injury in battery, could be construed as "physical
force."

The Supreme Court also specifically rejected the Govern-
ment's argument that § 922(g)(8)(C)(ii) illustrated a Congres-
sional intent that the term "physical force" in other statutes
should be taken to mean all forms of force no matter how
minimal. As in *Nason* and *Griffith*, the Government con-
tended in *Johnson* that Congress knew how to limit what con-
stitutes "physical force" when it wished because it did so in
§ 922(g)(8)(C). That statute makes it a felony to possess a
firearm when under a court order that "restrains such person
from . . . threatening an intimate partner," § 922(g)(8)(B), and
the order "by its terms explicitly prohibits the use . . . of phys-
ical force against such intimate partner . . . that would reason-
ably be expected to cause bodily injury." § 922(g)(8)(C)(ii).
The Government argued that since the ACCA contained no
"bodily injury" qualifier to the term "physical force," then the
term "physical force" must include all force no matter how
minimal, as in an offensive touching under common law bat-
tery. The Supreme Court disagreed.

> The absence of such language in § 924(e)(2)(B)(i),
> the Government contends, proves that the merest
> touch suffices. Even as a matter of logic that does
> not follow. Specifying that "physical force" must rise
> to the level of bodily injury does not suggest that
> without the qualification "physical force" would con-
> sist of the merest touch.

*Id.* at 1272.

The Supreme Court's conclusion in *Johnson* that "the
phrase 'physical force' means *violent* force," *id.* at 1271, was
foreshadowed by its decision in *Leocal v. Ashcroft*, 543 U.S.

1 (2004). In that case the Supreme Court interpreted the statutory definition of 'crime of violence' in 18 U.S.C. § 16 which, like the ACCA and § 921(a)(33)(A)(ii), "has as an element the use . . . of physical force against the person or property of another." § 16(a). In *Leocal* the Supreme Court explained that

> [i]n construing both parts of § 16, we cannot forget that we ultimately are determining the meaning of the term 'crime of violence.' The ordinary meaning of this term, combined with § 16's emphasis on the use of physical force against another person (or the risk of having to use such force in committing a crime), suggests a category of violent, active crimes. . . ."

543 U.S. at 11.

While in *Johnson* the Supreme Court declined to respond to the Government's inquiry as to whether "physical force" in § 921(a)(33)(A) would have the same meaning as under § 924(e)(2)(B), it did so because "[t]he issue is not before us, so we do not decide it." 130 S. Ct. at 1273. However, the force of the Supreme Court's reasoning in *Johnson* and *Leocal* as to the meaning of "physical force" for § 922(g)(9) purposes is compelling if not overwhelming.

We see little, if any, distinction between the "physical force" element in a "crime of *violence*" in § 16 under *Leocal*, a "*violent* felony" under § 924(e) in *Johnson* and a "misdemeanor crime of domestic *violence*" in § 922(g)(9) in the case at bar. All these statutes describe an act of "violence" and require the identical element of that violent act to include "physical force." A "crime of violence" is a "violent, active crime" and a "violent felony" requires "violent force." We see no principled basis upon which to say a "crime of domestic *violence*" would include *nonviolent* force such as offensive touching in a common law battery.

The adjective "domestic" only informs the analysis by limiting a predicate offense under § 922(g)(9) to crimes committed by those with a special relationship to the victim. This relationship is not an element of the offense, *Hayes*, 129 S. Ct. at 1084, and does not assist the analysis about a crime of violence. Similarly, the "misdemeanor" provision under § 922(g)(9) describes the punishment status of the predicate offense and has no bearing on the statutory mandate of a crime of violence.

For these reasons, we apply to § 921(a)(33)(A)(ii) the same meaning of "physical force" adopted by the Supreme Court in *Johnson* — "the phrase 'physical force' means *violent* force-that is, force capable of causing physical pain or injury to another person." *Johnson*, 130 S. Ct. at 1271. In doing so, it is clear that "physical force," so defined, is not an element of assault and battery under the well-established law of Virginia. *See* cases cited *supra* at 6-8. Therefore, White's conviction under VA CODE ANN. § 18.2-57.2 is not, on its face, a "misdemeanor crime of domestic violence" under § 922(g)(9) because the Virginia statute is not an "offense that . . . has, as an element, the use or attempted use of physical force."[4]

---

[4]In reaching this conclusion, we reject, as did the Supreme Court in *Johnson*, the Government's argument that "physical force" in § 922(g)(9) should have a broader scope and include the offensive touching in common law battery because § 922(g)(8)(C)(ii) specifically limits "physical force" to that "which would reasonably be expected to cause bodily injury." We do not see divining an unstated Congressional intent to the meaning of "physical force" in § 922(g)(9) any differently than the Supreme Court saw with that term in § 924(e). That the terms relate to the same general Code section, § 922, is of no moment. As the Supreme Court noted in *Johnson*, "this is not a case where Congress has 'include[d] particular language in one section of a statute but omit[ted] it in another section of *the same Act*.'" 130 S. Ct. at 1272 (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983)). Section 922(g)(9) was adopted in 1996 as an amendment to the Omnibus Consolidated Appropriations Act of 1997 while § 922(g)(8)(C) was enacted by the Congress in 1994 as part of the Violent Crime Control and Law Enforcement Act. Clearly, the enactments were not part of the same Act. *Compare* Pub. L. No. 104-208, § 658, 110 Stat. 3009, with Pub. L. No. 103-322, § 110401, 108 Stat. 2015 (1994).

III.

The Government argues that in the event we determine, as we have, that VA CODE ANN. § 18.2-57.2 does not contain, as an element, the use of "physical force," "[i]t is no answer to say that a modified categorical approach may be used and that the United States may prove that actual physical injury occurred through materials identified in *Shepard v. United States*, 544 U.S. 13 (2005)."[5] Br. of Appellee at 15. The Government made the same argument in *Johnson*, contending the Court's definition of "physical force" will "undermine [the Government's] ability to enforce the firearm disability in § 922(g)(9)." *Johnson*, 130 S. Ct. at 1273. We reject the Government's argument here for the same reason the Supreme Court did so in *Johnson*, because it

> exaggerates the practical effect of our decision. When the law under which the defendant has been convicted contains statutory phrases that cover several different generic crimes, some of which require violent force and some of which do not, the "'modified categorical approach'" that we have approved, *Nijhawan v. Holder*, 557 U.S. ___, ___, 129 S.Ct. 2294, 2302 (2009), permits a court to determine which statutory phrase was the basis for the convic-

---

[5]"In assessing whether an offense constitutes [a] predicate offense, two types of analyses are potentially applicable-known as the 'categorical' approach and the 'modified categorical' approach." *United States v. Harcum*, 587 F.3d 219, 222 (4th Cir. 2009). The categorical approach requires us to analyze the offense "generically-that is, by relying *solely on its essential elements*, rather than on the particular underlying facts." *United States v. White*, 571 F.3d 365, 368 (4th Cir. 2009). "This categorical approach requires courts to choose the right category. And sometimes the choice is not obvious." *Chambers v. United States*, ___ U.S. ____, 129 S. Ct. 687, 690 (2009). However, despite the Supreme Court's "preference for the categorical approach, that approach does not always reveal the nature of the asserted predicate offense encountered by a sentencing court." *Harcum*, 587 F.3d at 223. In those "narrow range of cases," *Taylor*, 495 U.S. at 602, a "modified categorical approach" may be used.

tion by consulting the trial record-including charging documents, plea agreements, transcripts of plea colloquies, findings of fact and conclusions of law from a bench trial, and jury instructions and verdict forms. *See Chambers v. United States*, 555 U.S. ___, ___, 129 S.Ct. 687, 691 (2009); *Shepard*, 544 U.S. at 26; *Taylor v. United States*, 495 U.S. 575, 602 (1990). Indeed, the Government has in the past obtained convictions under the Armed Career Criminal Act in precisely this manner. *See, e.g.*, *United States v. Simms*, 441 F.3d 313, 316-317 (C.A.4 2006) (Maryland battery); *cf. United States v. Robledo-Leyva*, 307 Fed. Appx. 859, 862 (5th Cir.) (Florida battery), *cert. denied*, 558 U.S. ___, 130 S.Ct. 64; *United States v. Luque-Barahona*, 272 Fed. Appx. 521, 524-525 (7th Cir. 2008) (same).

It may well be true, as the Government contends, that in many cases state and local records from battery convictions will be incomplete. But absence of records will often frustrate application of the modified categorical approach-not just to battery but to many other crimes as well. *See, e.g.*, *Shepard*, *supra*, at 22-23, 125 S.Ct. 1254 (burglary).

130 S. Ct. at 1273.

We now turn to the record in this case under the modified categorical approach to discern if a basis exists to support White's conviction. As we explained in *United States v. Harcum*, 587 F.3d 219 (4th Cir. 2009):

when the fact of conviction and the statutory definition of the offense are unduly vague or ambiguous, a sentencing court is entitled to turn to and apply the alternative "modified categorical" approach. In its 1990 *Taylor* decision, for example, the Supreme Court was unable, under the categorical approach, to

determine whether Taylor's burglary offense quali-
fied as a "violent felony" under the ACCA, because
the record did not reflect which specific state bur-
glary statute was applicable, and not all of the state's
burglary statutes involved criminal conduct that
would qualify as an ACCA violent felony [because
it did not involve the use or attempted use of physi-
cal force]. Thus, the Court recognized that a sentenc-
ing court is entitled, in the proper circumstances, to
go beyond the scope of the categorical approach and
assess the underlying charging documents or jury
instructions to ascertain whether the offense qualifies
as an ACCA predicate offense.

587 F.3d at 223 (citations omitted).

The circumstances in this case require application of the
modified categorical approach because, although we know the
specific state statute applicable to White's conviction, we do
not know whether that conviction was based on an "offensive
touching" or the use of "physical force." *See United States v.
Rivers*, 595 F.3d 558, 564 (4th Cir. 2010) (stating, in the con-
text of the ACCA, that "the modified categorical approach
most naturally applies to statutes which proscribe different
types of behavior constituting separate crimes"). As we
explained earlier, due to Virginia's reliance on the common
law requirements for assault and battery, a court cannot sim-
ply look at "the fact of conviction and the statutory definition
of the offense of conviction to determine whether the offense
is a [misdemeanor crime of domestic violence]." *Id.* at 222.

Applying the modified categorical approach to the facts of
this case, we need not decide whether the executed arrest war-
rant in the record from White's state court conviction may be
considered a "charging document" because, even if it could be
so construed, nothing in that document, or any other part of
the record, would enable us to determine whether White's

assault and battery conviction involved the use of "physical force."

### IV.

We thus conclude that the phrase "physical force" in § 921(a)(33)(A)(ii) means force, greater than a mere offensive touching, that is capable of causing physical pain or injury to the victim. Accordingly, a conviction for assault and battery in Virginia does not require "physical force" as an element of the crime. As a consequence, a Virginia conviction for assault and battery under VA CODE ANN. § 18.2-57.2, in and of itself, does not meet the definition of a § 922(g)(9) "misdemeanor crime of domestic violence." Applying the "modified categorical approach" outlined in *Taylor v. United States*, 495 U.S. 575 (1990) and *Shepard*, the record is devoid of any qualifying documentation to show White's conviction under VA CODE ANN. § 18.2-57.2 was otherwise "a misdemeanor crime of domestic violence" under § 922(g)(9). We therefore reverse White's conviction and vacate his sentence.[6]

*REVERSED AND VACATED*

---

[6]Aside from White's claim that his underlying state conviction did not constitute a "misdemeanor crime of domestic violence," he made additional arguments on appeal. Due to our disposition of this case it is unnecessary to address these remaining issues.