CLAY, J., delivered the opinion of the court, in which MOORE, J., joined. MOORE, J. (pp. 592-93), delivered a separate concurring opinion. McKEAGUE, J. (pp. 593-97), delivered a separate dissenting opinion.
OPINION
CLAY, Circuit Judge.
The government appeals orders granting Defendant James Castleman’s motion to dismiss two counts of his indictment, which charged Castleman with possession of a firearm after conviction for a misdemeanor crime of domestic violence in violation of 18 U.S.C. § 922(g)(9), and denying the government’s motion for reconsideration. Because the district court correctly interpreted § 922(g)(9), we AFFIRM the district court’s judgment.
BACKGROUND
In 2001, Castleman pleaded guilty to one count of misdemeanor domestic assault in violation of Tennessee Code § 39-13-111(b). That statute makes a defendant *584 liable for a misdemeanor if he “commits an assault as defined in § 39-13-111 against a domestic abuse victim.” Tenn.Code Ann. § 39-13-lll(b). Under § 39-13-101, a person is guilty of assault if he:
(1) Intentionally, knowingly or recklessly causes bodily injury to another;
(2) Intentionally or knowingly causes another to reasonably fear imminent bodily injury; or
(3) Intentionally or knowingly causes physical contact with another and a reasonable person would regard the contact as extremely offensive or provocative.
Tenn.Code Ann. § 39-13-101. Castle-man’s 2001 indictment asserted that he “did intentionally or knowingly cause bodily injury to [the mother of his child]” in violation of § 39-13-lll(b), to which he pleaded guilty on July 16, 2001.
Seven years later, federal agents discovered that Castleman and his wife were buying firearms from dealers and selling them on the black market. Under the Castlemans’ scheme, Castleman’s wife purchased firearms, allegedly lied on federal firearms paperwork by stating that she was the actual buyer of the firearms, and turned the firearms over to her husband, who was legally prohibited from purchasing firearms because of his domestic assault conviction. One of the firearms Castleman’s wife allegedly purchased was recovered in a homicide investigation in Chicago, Illinois. An investigation by the Bureau of Alcohol, Tobacco, Firearms & Explosives led agents to the Castlemans.
A grand jury indicted Castleman on two counts of possession of a firearm after being “convicted ... of a misdemeanor crime of domestic violence,” in violation of 18 U.S.C. § 922(g)(9). Section 922(g)(9) states that:
It shall be unlawful for any person ... who has been convicted in any court of a misdemeanor crime of domestic violence ... to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.
18 U.S.C. § 922(g)(9) (emphasis added). Section 921(a)(33)(A) of Title 18 defines a “misdemeanor crime of domestic violence” to include any offense that:
(i) is a misdemeanor under Federal, State, or Tribal law; and
(ii) has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon, committed by a current or former spouse, parent, or guardian of the victim, by a person with whom the victim shares a child in common, by a person who is cohabiting with or has cohabited with the victim as a spouse, parent, or guardian, or by a person similarly situated to a spouse, parent, or guardian of the victimf.]
18 U.S.C. § 921(a)(33)(A) (emphasis added).
On April 30, 2010, the district court dismissed the § 922(g)(9) counts in Castleman’s indictment, reasoning that Castleman’s misdemeanor domestic assault conviction did not qualify as a domestic violence crime requiring the “use or attempted use of physical force” as defined in 18 U.S.C. § 921(a)(33)(A)(ii). Drawing upon cases from some of our sister circuits, the district court read § 921(a)(33)(A)(ii) to require “force in the sense of violent contact” instead of merely “force as a scientific concept relating to the movement of matter.” (Order 5, R. 108.) In adopting that construction of § 922(g)(9), the district court rejected the construction adopted by other circuits and urged by the government, under which a *585 domestic assault conviction resulting from “subtle and indirect uses of physical force” would permit liability under § 922(g)(9). (Gov’t Br. 18.) Reasoning that Tennessee Code § 39-13-lll(b)(l) would permit a conviction for assaultive conduct not involving physical contact, the court concluded that Castleman’s conviction did not qualify as a predicate offense for purposes of § 922(g)(9). The government moved for reconsideration, which the district court denied, and then timely appealed.
DISCUSSION
I. Legal Framework
We review de novo a district court’s decision of whether a prior conviction qualifies as a predicate offense under 18 U.S.C. § 922(g)(9). See United States v. Gross, 662 F.3d 393, 406 (6th Cir.2011). In order to determine whether a conviction qualifies as a § 922(g)(9) predicate offense, we apply the “categorical approach” from Taylor v. United States, 495 U.S. 575, 600, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990), in which we “look[] to the statutory definition of the offense and not the particular facts underlying the conviction.” United States v. Gibbs, 626 F.3d 344, 352 (6th Cir.2010); see United States v. Hays, 526 F.3d 674, 679 (10th Cir.2008). If a defendant can violate the statute in a manner that involves the use or attempted use of physical force and in a manner that does not, we “may consider the indictment, guilty plea, or similar documents to determine whether they necessarily establish the nature of the prior conviction.” Id. (citing Shepard v. United States, 544 U.S. 13, 26, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005)).
II. Construction of 18 U.S.C. §§ 921(a)(33)(A) and 922(g)(9)
Like other federal appellate courts that have applied § 922(g)(9) to prior state convictions, we must determine the degree of force necessary for a misdemeanor domestic battery offense to qualify as a misdemeanor crime of domestic violence. See, e.g., Hays, 526 F.3d at 677-79; United States v. Nason, 269 F.3d 10, 13-18 (1st Cir.2001). The government argues that the district court incorrectly minimized the word “misdemeanor” in deciding whether Castleman’s domestic assault conviction was “a misdemeanor crime of domestic violence” under § 922(g)(9). The touchstone of the government’s argument is that § 922(g)(9)’s reference to misdemeanor domestic violence crimes triggers § 922(g)(9) liability for a defendant convicted of any generic, common-law assault and battery offense that involves no more than slight physical touching. By the government’s reckoning, Congress intended § 922(g)(9) to reach the typical common law assault or battery offense, which generally permits liability for causing bodily injury “by subtle and indirect uses of physical force.” (Gov’t Br. 18.)
The government’s argument is one of statutory interpretation. In construing § 922(g)(9), we seek Congress’ intent and refer first to the statute’s plain language. Chrysler Corp. v. C.I.R., 436 F.3d 644, 654 (6th Cir.2006); Herman v. Fabri-Centers of Amer., Inc., 308 F.3d 580, 585 (6th Cir.2002). We look to the statute’s plain language with “the assumption that the ordinary meaning of that language accurately expresses the legislative purpose.” Discount Tobacco City & Lottery, Inc. v. United States, 674 F.3d 509, 549 (6th Cir.2012) (quoting Park 'N Fly, Inc. v. Dollar Park & Fly, Inc., 469 U.S. 189, 194, 105 S.Ct. 658, 83 L.Ed.2d 582 (1985)). We presume every word or phrase in the statute has independent effect. See, e.g., United States v. Perry, 360 F.3d 519, 537 (6th Cir.2004). If the statute is clear as *586 written, the plain language is both our starting and ending point, making it unnecessary to delve into the statute’s legislative history. United States v. Douglas, 634 F.3d 852, 858 (6th Cir.2011).
The government’s argument is unpersuasive. It overlooks the nearly identical language of § 921(a)(33)(A) and 18 U.S.C. §§ 16(a) and 924(e)(2)(B)®. Section 921(a)(33)(A)(ii) defines a “misdemeanor crime of domestic violence” as a crime that “has, as an element, the use or attempted use of physical force,” against a victim with whom the defendant shares a domestic relationship.[1] Like § 921(a)(33)(A)(ii), §§ 16(a) and 924(e)(2)(B)® use the phrase “physical force” to define “crime of violence” and “violent felony,” respectively. Section 16(a) defines a “crime of violence” in part as “an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another.” For its part, § 924(e)(2)(B)® defines a “violent felony” in part as a crime “that has as an element the use, attempted use, or threatened use of physical force.” By defining a “misdemeanor crime of domestic violence” to require “the use or attempted use of physical force,” § 921(a)(33)(A)(ii) drops the reference to “threatened use” from §§ 16(a) and 924(e)(2)(B)® but otherwise tracks the language of §§ 16(a) and 924(e)(2)(B)®. The provisions’ similarity supports the inference that Congress intended them to capture offenses criminalizing identical degrees of force.
That inference gains strength in light of the order in which Congress adopted the statutes. Congress adopted §§ 921(a)(33)(A)(ii) and 922(g)(9) over a decade after it codified the “use of physical force” provisions in §§ 16(a) and 924(e)(2)(B)®, and, as we explained above, Congress used nearly identical language. See Pub. L. No. 104-208, § 101(f), 110 Stat. 3009-369, 3009-372 (1996); Pub. L. No. 99-308, § 102, 100 Stat. 451 (1986); Pub. L. No. 98^73, § 1001(a), 98 Stat. 2136 (1984). We consider a statute with language modeled on that of an earlier statute to function as a legislative interpretation of the statute in question, and give the earlier statute “great weight in resolving any ambiguities and doubts” in the later one. Beckert v. Our Lady of Angels Apartments, Inc., 192 F.3d 601, 606 (6th Cir.1999) (quoting United States v. Stewart, 311 U.S. 60, 64-65, 61 S.Ct. 102, 85 L.Ed. 40 (1940)).
The Fourth Circuit recently came to the same conclusion in United States v. White, 606 F.3d 144, 153 (4th Cir.2010). In White, the Fourth Circuit held that a Virginia domestic assault and battery statute is not a “misdemeanor crime of domestic violence” for purposes of § 921 (a)(33)(A)(ii). See id. As a basis for its decision, the court relied on Johnson v. United States, — U.S. —, 130 S.Ct. 1265, 176 L.Ed.2d 1 (2010). In Johnson, the Supreme Court held that a Florida battery statute that criminalized intentional striking, touching, and causing of bodily harm to another person was not a “violent felony” for purposes of § 924(e)(2)(B)®. Johnson, 130 S.Ct. at 1269,1273-74. In so holding, the Court interpreted the “physical force” requirement in that statute as “violent force ... capable of causing physi *587 cal pain or injury to another person” and “strong physical force.” Id. at 1271.
The White court found Johnson’s reasoning in regard to § 924(e)(2)(B)® “compelling if not overwhelming” in its application to § 921(a)(83)(A)(ii). White, 606 F.3d at 153. The court explained that it saw “little, if any, distinction between the ‘physical force’ element in a ‘crime of violence’ in § 16 under Leocal [v. Ashcroft, 543 U.S. 1, 9, 125 S.Ct. 377, 160 L.Ed.2d 271 (2004) ], a ‘violent felony’ under § 924(e) in Johnson and a ‘misdemeanor crime of domestic violence’ in § 922(g)(9).” Id. In the court’s opinion, there was “no principled basis upon which to say a ‘crime of domestic violence ’ would include nonviolent force such as offensive touching in a common law battery.” Id. White is consistent with cases from other circuits concluding that a common-law, offensive-touching battery statute does not require sufficient force to be a misdemeanor crime of domestic violence. See Hays, 526 F.3d at 679 (holding that a Wyoming domestic battery statute that criminalized unlawful touching “in a rude, insolent, or angry manner” requires insufficient force to constitute a misdemeanor crime of domestic violence); United States v. Belless, 338 F.3d 1063, 1068 (9th Cir.2003) (holding the same regarding the same Wyoming statute). We agree with these courts that the “physical force” provision of § 921 (a) (33) (A) (ii) is identical to § 924(e)(2)(B)® in the degree of force it requires in a qualifying predicate offense.[2] And as a result, we conclude that the degree of force Johnson requires for a conviction under § 924(e)(2)(B)® is required of a misdemeanor crime of domestic violence.
The dissent finds fault in our decision to construe §§ 921(a)(33)(A)(ii) and 922(g)(9) in light of §§ 16(a) and 924(e)(2)(B)®, and Johnson’s gloss on the latter statutes, because Johnson postdated the adoption of all the statutes in question. But this line of reason is hardly novel. For example, the Supreme Court used the identical line of argument in Smith v. City of Jackson, 544 U.S. 228, 234-38, 125 S.Ct. 1536, 161 L.Ed.2d 410 (2005) (plurality opinion), in which the Court held that disparate-impact claims are available under the Age Discrimination in Employment Act (“ADEA”), 29 U.S.C. § 623, based in part on its previous interpretation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-2. Congress adopted Title VII in 1964, and it adopted the ADEA in 1967. See Smith, 544 U.S. at 233, 125 S.Ct. 1536. Four years after Congress adopted the ADEA, the Supreme Court held in Griggs v. Duke Power Company, 401 U.S. 424, 433-34, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971), that Title VII authorizes claims of employment discrimination based on race even when a plaintiff cannot show that the defendant employer acted with a discriminatory intent. A majority of the Court explained that Griggs was “a precedent of compelling importance” when the Court considered the same issue with respect to the ADEA in 2005. Smith, 544 U.S. at 234, 125 S.Ct. 1536 (plurality opinion); see id. at 243, 125 S.Ct. 1536 (Scalia, J., concurring opinion) (expressing agreement with “all of the Court’s reasoning” but finding the issue better left for agency interpretation). The Court’s reasoning was consistent with its reading of Title VII and the ADEA in other cases. See Smith, 544 U.S. at 234 n. 4, 125 S.Ct. 1536 (citing Oscar Mayer & *588 Co. v. Evans, 441 U.S. 750, 756, 99 S.Ct. 2066, 60 L.Ed.2d 609 (1979), Western Air Lines, Inc. v. Criswell, 472 U.S. 400, 416, 105 S.Ct. 2743, 86 L.Ed.2d 321 (1985), and Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 121, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985)).
As Smith makes clear, the Supreme Court (or other federal courts) need not have answered a particular question about a statute’s meaning for the court to conclude that a construction of an earlier-adopted statute is “a precedent of compelling importance” to the interpretation of an identical, later-adopted statute. Id. at 234, 125 S.Ct. 1536. Therefore, our argument is obviously not that Congress knew about Johnson when it adopted § 922(g)(9). Rather, the governing principle holds that Congress’ decision to use identical language in writing the two statutes demonstrates its belief that the statutes share a similar meaning and, therefore, should be interpreted similarly. As we explained, that principle is not foreign to this Court. See, e.g., United States v. McAuliffe, 490 F.3d 526, 532 n. 3 (6th Cir.2007); Beckert, 192 F.3d at 606.
The government resists this conclusion by emphasizing § 922(g)(9)’s reference to “misdemeanor” offenses, but the government asks us to put more weight on the term “misdemeanor” than Congress meant the term to bear. Had Congress intended the word “misdemeanor” to have the effect suggested by the government, then Congress would have had no need to modify “misdemeanor” with the phrase “crime of violence.” Congress could simply have prohibited any person convicted of a “misdemeanor domestic assault or battery offense” from possessing a firearm. It chose not to do so.
Additionally, as the Supreme Court has explained in a different doctrinal context, the term “misdemeanor” “meant very different things in different common-law contexts” and was not defined in reference to the degree of force a misdemeanor offense required. Atwater v. Lago Vista, 532 U.S. 318, 328 n. 2, 121 S.Ct. 1536, 149 L.Ed.2d 549 (2001). “Misdemeanor” has an independent meaning in the statute, but it has a different meaning than the government suggests. See Perry, 360 F.3d at 537. “Misdemeanor crime of domestic violence” is most naturally interpreted to mean any crime requiring strong and violent physical force, which happens to be a misdemeanor. Under this formulation, a misdemeanor crime of domestic violence is part of a subset of misdemeanor offenses which does not include all assault and battery offenses, but rather only those assault and battery offenses in which violent physical force is involved. The most natural inference from this reading is that Congress aimed to extend § 922(g)(9) to reach individuals who committed violent domestic conduct but who were charged only with a misdemeanor, perhaps as a result of a plea agreement.[3]
*589 The dissent reads our opinion as having under-emphasized “the- distinction between misdemeanors and felonies in the ACCA” and therefore as unnecessarily applying Johnson’s degree-of-force requirement to § 922(g)(9). The dissent seems to suggest that our application of Johnson to § 922(g)(9) flows from the belief that the distinction between misdemeanor and felony crimes is “insignificant.” But the chain of reasoning flows in the opposite direction: any salient distinction between misdemeanors and felonies was, in our view, sufficiently insignificant to Congress that it wrote the statutes identically; thus, it is the similarity of the statutes that prohibits a domestic violence offense’s status as a misdemeanor from controlling the question of whether the offense qualifies as a misdemeanor crime of domestic violence.
Nor did Johnson treat the misdemean- or-felony distinction in the manner the dissents says it did. Though the Court in Johnson declined to use terms associated with misdemeanor offenses to define “violent felony,” it does not follow that the passage in question indicates a practice by the Court of incorporating the misdemean- or-felony distinction directly into the ACCA and § 922(g)(9). Instead, the relevant portion of Johnson suggests that the misdemeanor-felony distinction is not a viable framework for determining the level of violence an offense must require to qualify as a violent felony. See Johnson, 130 S.Ct. at 1271 (“[T]he dividing line between misdemeanors and felonies has shifted over .time”). The ACCA and § 922(g)(9), by contrast, is concerned with punishing defendants previously convicted of offenses characterized by a high degree of physical violence. And, as the Fourth Circuit explained in White, § 922(g)(9)’s reference to misdemeanor offenses “describes the punishment status of the predicate offense and has no bearing on the statutory mandate of a crime of violence.” White, 606 F.3d at 153.
III. Categorical Analysis
Having determined the degree of force required in a misdemeanor crime of domestic violence, we turn to the question of whether Tennessee Code § 39-13-111(b) categorically qualifies as a misdemeanor crime of domestic violence. See Gibbs, 626 F.3d at 352. Our decision in United States v. McMurray, 653 F.3d 367 (6th Cir.2011), requires us to conclude that it does not.
In McMurray, we held that a Tennessee aggravated assault conviction did not qualify as a predicate offense for purposes of 18 U.S.C. § 924(e)(2)(B)®, because the statute criminalizes reckless conduct. 653 F.3dat 376. The McMurray defendant had been convicted of violating Tennessee’s aggravated assault statute, which incorporates § 39 — 13—101. Id. at 372. We limited our inquiry to whether a conviction under “the serious-bodily-injury prong” of the aggravated assault statute satisfied the *590 “use of physical force” provision in § 924(e)(2)(B)(i). Id. at 373. We relied on Johnson, 130 S.Ct. at 1270, Leocal, 543 U.S. at 9, 125 S.Ct. 377, and United States v. Portela, 469 F.3d 496 (6th Cir.2006), in support of the proposition that a state offense making a defendant liable for “reckless” conduct could not qualify as a predicate offense. Id. at 374. Since the Tennessee aggravated assault statute prohibits “recklessly ... causing] bodily injury to another,” we reasoned that the defendant’s aggravated assault conviction did not qualify as a violent felony under the “use of physical force” clause of § 924(e)(2)(B)®. Id. at 372, 376; see also United States v. Anderson, 695 F.3d 390 (6th Cir.2012) (concluding that an aggravated assault conviction qualified as a violent felony under § 924(e)(2)(B) where the statute required the defendant to knowingly cause serious physical harm to a victim).
Castleman pleaded guilty to an offense less severe than did the defendant in McMurray. Castleman pleaded guilty to misdemeanor domestic assault, for which a defendant is liable if he “commits an assault as defined in § 39-13-101 against a domestic abuse victim.” Tenn.Code Ann. § 39 — 13—111(b). McMurray held that the violation of a statute that builds on § 39-13-101 and makes it a crime to cause “serious bodily injury” does not require the use of violent force. It stands to reason, then, that the violation of a statute that also builds on § 39-13-101 but makes it a crime only to cause “bodily injury,” serious or not, also does not require the use of violent force. Therefore, a defendant could violate Tennessee Code § 39-13-lll(b) both in a manner that constitutes a “misdemeanor crime of domestic violence” and in a manner that does not.
This reasoning is consistent with United States v. Anderson, 695 F.3d 390 (6th Cir.2012), in which we recently decided that a defendant’s aggravated assault conviction qualified as a violent felony under § 924(e)(2)(B) because the underlying Ohio statute required the defendant to knowingly cause “serious physical harm to another.” Id. at ¶ 31-32 (quoting Ohio Rev. Code Ann. § 2903.12(A)). Undertaking a categorical analysis of the Ohio statute, we concluded that “only by knowingly using force capable of causing physical pain or injury, ie., violent physical force,” can a defendant cause serious physical injury to a victim. Id. at ¶ 32. And reasoning that “[t]he degree of injury has a ‘logical relation to the use of physical force,’ ” our ruling was grounded in the fact that proof of a “serious” physical injury was required to obtain a conviction and, in turn, to qualify the conviction as a violent felony. Id. at ¶ 34 (quoting De Leon Castellanos v. Holder, 652 F.3d 762, 766 (7th Cir.2011)).
In this case, by contrast, the statute does not require proof of a serious physical injury. Rather, it requires proof of just some physical injury, regardless of how slight. Castleman could have caused a slight, nonserious physical injury with conduct that cannot be described as violent. Castleman may have been convicted for causing a minor injury such as a paper cut or a stubbed toe, in which he knowingly acted in a manner that caused a domestic relations bodily harm but did so using less than strong physical force. Therefore, Castleman’s conviction under Tennessee Code § 39-ll-lll(b), in which he caused an unspecified bodily injury, is not a misdemeanor crime of domestic violence.
IV. Modified Categorical Analysis
Having concluded that Tennessee Code § 39 — 13—111(b) is not categorically a misdemeanor crime of domestic violence, we now consider whether Castleman’s conviction qualifies as such given the proof of his conduct available to us. Gibbs, 626 *591 F.3d at 352. Among the Shepard documents we are able to consider in making this inquiry is the indictment to which Castleman pleaded guilty. Id. (citing Shepard, 544 U.S. at 26, 125 S.Ct. 1254). Castleman’s indictment states tersely that he “did intentionally or knowingly cause bodily injury” to a woman with whom he had a domestic relationship in violation of § 39-13-lll(b). The indictment does not specify the type of injury Castleman caused or its severity. The logic applicable to the categorical analysis of Castle-man’s conviction applies here as well, because Castleman’s indictment adopts the language of the statute and does not specify the type or severity of injury he caused.
The government argues that it was impossible for Castleman to cause his victim any bodily injury without using the degree of force required under § 921(a)(33)(A)(ii). That argument is unpersuasive inasmuch as an individual can cause an unspecified bodily injury with nonviolent physical force. Tennessee law supports this proposition. Tennessee law defines “bodily injury” to include “a cut, abrasion, bruise, burn or disfigurement, physical pain or temporary illness or impairment of the function of a bodily member, organ or mental faculty.” Tenn.Code Ann. § 39-ll-106(a)(2). A defendant himself need not necessarily use “violent ” and “strong physical force” to cause a cut, an abrasion, or a bruise. Johnson, 130 S.Ct. at 1270. Rather, a defendant can cause one of these injuries with nonviolent force that either causes a slight injury or exposes the victim to bodily injury. As we explained, Castle-man may have been convicted for causing a minor, nonserious physical injury, in which he caused the individual with whom he had a domestic relationship bodily harm, but did so using less than strong physical force. Therefore, Castleman’s indictment does not provide a basis from which we can conclude that his domestic assault conviction entailed violent physical force.
Our decision is consistent with United States v. Alexander, 543 F.3d 819 (6th Cir.2008), which the government incorrectly argues is in conflict with our conclusion regarding Castleman’s domestic assault conviction. In Alexander, we held that a defendant’s Michigan conviction for assaulting a police officer was a crime of violence for purposes of USSG § 4B1.2(a), in part because the statute required proof that the defendant caused the officer bodily injury. Id. at 823; see McMurray, 653 F.3d at 371 n. 1 (explaining that USSG § 4B1.2(a) and § 924(e)(2)(B) are applied in conjunction with one another).
The government overlooks three important distinctions between Alexander and this case. First, we decided Alexander before the Supreme Court decided Johnson, so we must look to Johnson in deciding whether an offense requires the use or attempted use of physical force. Second, the Michigan statute at issue in Alexander required the government to prove that the defendant caused an officer a bodily injury “requiring medical attention or medical care.” Id. (quoting M.C.L.A. § 750.81d(2)). Indeed, our conclusion that the defendant’s crime was a violent felony was largely grounded on the fact that the conviction “require[d] causing an actual physical injury sufficiently severe to require medical care.” Id. By contrast, Castleman may have pleaded guilty for doing no more than swatting or scratching the victim, see State v. Wachtel, No. M200300505-CCA-R3-CD, 2004 WL 784865, at *12 (Tenn.Ct.Crim.App. Apr. 13, 2004), and causing no more than a cut, abrasion, or bruise, none of which would have required medical care. Tenn.Code Ann. § 39-ll-106(a)(2). Third, in Alexander we considered the defendant’s conviction on plain error review and could have only *592 reversed the district court’s judgment upon a finding of an obvious error that adversely affected both the defendant’s substantial rights and the reputation and integrity of the judiciary. See id. at 822 (quoting United States v. Koeberlein, 161 F.3d 946, 949 (6th Cir.1998)). Here, by contrast, we undertake de novo review and agree with the district court’s judgment. Therefore, even after Johnson, our decision is consistent with Alexander.
CONCLUSION
For the foregoing reasons, we AFFIRM the district court’s judgment.

. Unlike § 924(e)(2)(B), § 921(a)(33)(A)(ii) does not contain a clause listing particular common law violent felonies ("burglary, arson, or extortion") or a residual clause ("otherwise involves conduct that presents a serious potential risk of physical injury to another”). Therefore, cases construing the residual clause in § 924(e)(2)(B)(ii) do not inform this appeal. See Sykes v. United States, - U.S. -, 131 S.Ct. 2267, 180 L.Ed.2d 60 (2011); United States v. Vanhook, 640 F.3d 706 (6th Cir.2011).

. We also note that other federal courts have come to the opposite conclusion and held that an offense requiring only slight touching can qualify as a misdemeanor crime of domestic violence. See United States v. Griffith, 455 F.3d 1339, 1342 (11th Cir.2006); Nason, 269 F.3d at 20.

. In Johnson, the Supreme Court concluded that a battery offense was not a "violent felony,” in part because the Court found it "unlikely that Congress would select a term of art defining 'violent felony' a phrase that the common law gave peculiar meaning only in its definition of a misdemeanor.” 130 S.Ct. at 1271-72. According to government, this statement implies that the Court understands § 922(g)(9), with its limitation to "misdemeanor” offenses, to encompass all misdemeanor offenses attaching criminal liability to an offensive touching. The government reads the Court's statement to establish a broader proposition than it was intended. The Court’s reference to the word "misdemeanor” was not aimed to demonstrate that a misdemeanor offense requiring less than violent force would trigger § 922(g)(9). Rather, the reference was aimed strictly to demonstrate why Congress would not use the word "felony” if it intended to cast liability to include an *589 offense traditionally categorized as a misdemeanor. We do not read the Court’s statement as an intended construction of § 922(g)(9).
Insofar as the Court's statement does bear on § 922(g)(9), it supports a proposition that we have applied here. At bottom, Johnson’s discussion of the common-law heritage of battery offenses reflected the established practice of presuming that Congress intended to incorporate the common-law meaning of a term absent evidence to' the contrary. See Info-Hold. v. Sound Merchandising, Inc., 538 F.3d 448, 455-56 (6th Cir.2008). Nothing about our decision transgresses that practice. The government asks us to do more than give due respect to the common-law history of “misdemeanor”; it asks us to read "misdemeanor” to swallow the remainder of § 922(g) and ignore the statute’s remaining terms. We decline, because doing so would read the remaining language out of the statute.