Roseanne **BECKERT**, Plaintiff–
Appellant,

v.

**OUR LADY OF ANGELS
APARTMENTS, INC.,**
Defendant–Appellee.

No. 98–3364.

United States Court of Appeals,
Sixth Circuit.

Argued June 18, 1999.

Decided Sept. 27, 1999.

---

Edward G. Kramer (argued and briefed), Fair Housing Law Clinic, Cleveland, OH, for Plaintiff–Appellant.

Joseph F. Shucofsky (briefed), Cleveland, OH; William P. Gibbons (argued and briefed), Cleveland, OH, for Defendant–Appellee.

Before: BOGGS, NORRIS, and BATCHELDER, Circuit Judges.

BATCHELDER, Circuit Judge.

Plaintiff–Appellant Roseanne Beckert appeals the district court's order granting summary judgment to the Defendant–Appellee Our Lady of Angels Apartments, Inc. ("OLA"), in this action claiming a violation of the Fair Housing Act Amendments of 1988 ("FHAA"), 42 U.S.C. §§ 3604(f)(1)(A) and (f)(3)(B). For the reasons that follow, we affirm the judgment of the district court.

## BACKGROUND

OLA is a non-profit Ohio corporation providing housing and related facilities to the elderly and physically handicapped pursuant to Section 202 of the National Housing Act of 1959 (" § 202"), 12 U.S.C. § 1701q(a)(1)(1988) (amended 1991). In 1980, OLA submitted an application to the United States Department of Housing and Urban Development ("HUD") to obtain a loan under § 202 to renovate the former Franciscan Monastery in Cleveland, Ohio. Pursuant to guidelines contained in HUD handbook, *Occupancy Requirements of Subsidized Multifamily Housing Programs* (revised Jan. 19, 1993), OLA established its "tenant selection procedure:"

> The purpose of the Franciscan Village as approved by the Department of Housing and Urban Development is to provide housing and appropriate support service to persons over sixty-two years of age or physically handicapped as defined by Department of Housing and Urban Development, who are in relatively good health that is consistent with independent living into the future.

Franciscan Village was not selected nor does it possess the resources required to meet the special needs of other eligible Section 202 constituencies such as the developmentally disabled or the chronically mentally ill.

In 1988, Beckert applied to be put on a waiting list for housing at OLA. She indicated that she was handicapped but did not disclose the nature of her handicap. In 1993, Beckert submitted a preliminary application to OLA, indicating that her handicap was a "mental-schizo" condition and that she was on two medications, Prolixin and Cogentin. Beckert had been diagnosed as mentally handicapped, suffering from chronic undifferentiated schizophrenia. After consulting with HUD agents, OLA denied Beckert's application because she was neither elderly nor physically handicapped and, therefore, ineligible for housing at OLA's facility.

Beckert filed suit, claiming that by refusing to accept her application, OLA had engaged in discrimination among the handicapped and, in particular, discrimination against her in the rental of housing "because of a handicap." Such discrimination, Beckert argues, violates the FHAA, which, among other things, prohibits discrimination in the provision of housing because of a handicap of the person seeking such housing. See 42 U.S.C. § 3604(f)(1)(A). Beckert argues that although § 202 may have allowed housing sponsors to serve some but not all qualified groups of handicapped persons, the FHAA has superseded and effectively repealed § 202.

The district court granted OLA's motion for summary judgment, holding that (1) the FHAA did not effectively repeal § 202, and (2) OLA did not unlawfully discriminate against Beckert in violation of §§ 3604(f)(1)(A) and (f)(3)(B) of the FHAA. The district court held that although Beckert may have been eligible generally for § 202 housing because of her mental handicap, § 202 continues to permit housing sponsors to serve some eligi-

ble groups of tenants, such as the elderly and the physically handicapped, while declining to serve other eligible groups, such as the mentally handicapped. The district court dismissed Beckert's remaining state law housing discrimination claim without prejudice.

## DISCUSSION

The question before this Court—whether after the enactment of the FHAA, § 202 housing sponsors may continue to serve less than all eligible constituents—is one of first impression.

### I.

Section 202 is a funding mechanism, the express purpose of which is to assist sponsors "to provide housing and related facilities for elderly or handicapped families." 12 U.S.C. § 1701q(a)(1) (emphasis added). Implicit in the statute, however, is permission for housing sponsors to choose to serve only some qualified constituents while declining to serve others. Section 202 requires that the housing and related facilities funded under this section

> will be in appropriate support of, and supported by, applicable State and local plans which respond to Federal program requirements by providing an assured range of necessary services for individuals occupying such housing (which services may include, among others, health (including adult day health services), continuing education, welfare, informational, recreational, homemaker, counseling, and referral services, transportation where necessary to facilitate access to social services, and services designed to encourage and assist recipients to use the services and facilities available to them) . . . .

1. It is undisputed in this case that the OLA loan, obtained from HUD in 1980, is governed by the provisions of 12 U.S.C. § 1701q, which was the operative law at the time. While 12 U.S.C. § 1701q continues to govern the provision of financial assistance to sponsors of housing for the elderly, the Cranston–Gonzalez Act, 42 U.S.C. § 801, now governs

12 U.S.C. § 1701q(f) (1988) (amended 1991).[1] This provision implies that a housing facility is permitted to select the services necessary for the particular residents of that facility; such selection would surely be inconsistent with a requirement that every § 202 facility accept applicants with every kind of handicap.

Pre–FHAA courts have recognized that § 202 does not contemplate that if a housing sponsor chooses to provide housing for the handicapped, it must fully provide for every kind of handicap. *See, e.g., Knutzen v. Eben Ezer Lutheran Hous. Ctr.*, 815 F.2d 1343 (10th Cir.1987); *Brecker v. Queens B'Nai B'Rith Hous. Dev. Fund Co.*, 798 F.2d 52 (2d Cir.1986). Both *Knutzen* and *Brecker* addressed the validity of § 202 after the enactment of § 504 of the Rehabilitation Act of 1973, which provides that "no otherwise qualified individual . . . shall, solely by reason of her or his disability," be denied the benefits of a federally funded program. 29 U.S.C. § 794. Although § 202 expressly permits a facility to provide housing for either the elderly or the handicapped, both *Knutzen* and *Brecker* took § 202 one step further, determining that § 202 permits housing sponsors to serve individuals with a particular type of handicap while declining to serve those with another. *Brecker* found authority for this proposition in the evolution of the statute's language:

> When Congress expanded the program in 1964 to include housing for certain nonphysically handicapped persons, *see* P.L. 88–560, § 203(a)(2)(A), 78 Stat. 769, 783 (1964), and when it again expanded the program in 1974 to include housing for other handicapped persons, including those who are developmentally disabled,

the provision of financial assistance to sponsors of housing for the handicapped. In any event, the provisions contained in the former 12 U.S.C. § 1701q are now contained in the respective statutes governing financial assistance to sponsors of housing for the elderly and handicapped.

*see* P.L. 93–383, § 210(b), 88 Stat. 633, 669–70 (1974), it was careful to employ statutory language in these amendments that clearly permits HUD to approve a loan to any single sponsor who wishes to build housing only for the elderly *or only for some class of handicapped persons or for a combination of eligible groups.* A sponsor need not serve all eligible needy groups. See 12 U.S.C. § 1701q(a)(2) . . . .

*Brecker*, 798 F.2d at 55–56 (emphasis added).[2]

The *Knutzen* Court, relying on *Brecker*, HUD regulations, and the HUD handbook,[3] also held that eligible § 202 tenants may be subdivided into four categories—the elderly, the physically handicapped, the chronically mentally ill, and the developmentally disabled. *Knutzen* determined that HUD regulations allow prospective § 202 sponsors to apply to HUD for financial assistance for housing "a particular 'anticipated occupancy (elderly and/or handicapped [physically handicapped or developmentally disabled . . . ] )' by specifying the subclass or subclasses of eligible tenants that it wishes to serve." *Knutzen*, 815 F.2d at 1351 (citing 24 C.F.R. 885.210(a)(5) (as amended 1982)) (alteration in original).[4]

Support for this interpretation also is found in the Cranston–Gonzalez National Affordable Housing Act, Pub.L. No. 102–625, 42 U.S.C. § 801 (effective Nov. 28, 1990) [hereinafter Cranston–Gonzalez Act], and the Housing and Community Development Act of 1992, Pub.L. No. 102–550, 42 U.S.C. § 13601 et seq. (effective Oct. 28, 1992) [hereinafter HCDA]. The Cranston–Gonzalez Act, which amended § 202 and restructured the programs providing financial assistance to the elderly and the handicapped, is instructive as to Congress's intent with respect to eligibility requirements for § 202 housing projects. Section 202, as amended, states in its general provision relating to tenant selection:

(i)(1) An owner shall adopt written tenant selection procedures that . . . shall comply with [the HCDA] and any regulations issued under such subtitle.

. . . .

(j)(7) Each owner shall operate housing assisted under this section in compliance with [the HCDA] and any regulations issued under such subtitle.

12 U.S.C. § 1701q (1992). In turn, the legislative history of the HCDA indicates:

The Committee is aware that under the section 202/section 8 program, projects developed for the elderly include 10 percent of the units which are designed and designated for physically handicapped persons whose handicap results in a functional limitation in access to and use of the building. Owners are required to admit eligible non-elderly as well as elderly physically handicapped persons to such units. However, non-elderly physically handicapped persons may only be admitted if the special features of the unit are necessary based on the nature of the person's disability. As an example, a non-elderly person with mobility impairment requiring a wheelchair or a walker would be eligible for such a unit because of the need for the accessibility features of the unit. *A non-elderly person whose only disability is chronic mental illness would not be eligible.* Only persons or families headed by a

---

**2.** While we do not agree with the *Brecker* Court's view that the language of § 202 explicitly permits the housing provider to select among the types of handicapped its facility will serve, we think, as we explain hereinafter, that the right to make such a selection is implicit in the statute.

**3.** Dep't of Housing & Urban Development, Handbook 4571.1REV2, Section 202 Direct Loan Program for Housing for the Elderly or Handicapped Processing Handbook (March 1983) ("Handbook 4571.1 REV2"); Memorandum from Philip Abrams, Ass't Sec'y for Housing, Dep't of Housing & Urban Development (June 7, 1983) ("Abrams Memo").

**4.** Part 885 subsequently was redesignated as 24 C.F.R. part 891, subpart E, 61 Fed.Reg. 11,956 (1996).

person 62 years of age or older would be eligible for the other 90 percent of the units in a project for the elderly. The Committee expects that these distinctions will be maintained.

H.R.Rep. No. 102–760, 102nd Cong., 2nd Session, July 30, 1992, pages 141–42, reprinted in U.S.C.C.A.N. 3281, 3421–22 (House Committee on Banking, Finance and Urban Affairs) (emphasis added).

■ Under the doctrine of *in pari materia,* a "later act can ... be regarded as a legislative interpretation of the earlier act in the sense that it aids in ascertaining the meaning of the words as used in their contemporary setting. It is therefore entitled to great weight in resolving any ambiguities and doubts." *United States v. Stewart,* 311 U.S. 60, 64–65, 61 S.Ct. 102, 85 L.Ed. 40 (1940). Applying this doctrine to § 202 and its predecessors, we conclude that Congress intended to continue to permit § 202 housing sponsors to choose to serve some but not all qualified groups.

■ For the foregoing reasons, we hold that HUD's interpretation of § 202, that is, that § 202 permits a facility under its terms to serve certain eligible groups of tenants while denying other eligible groups, is reasonable and deserves deference. *See Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) ("If ... Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.") (footnote omitted). We now turn to the question of whether such an interpretation survives the FHAA.

## II.

■ Section 3604 of the FHAA states that it shall be unlawful "[t]o discriminate in the sale or rental, or to otherwise make unavailable or deny a dwelling to any buyer or renter because of a handicap of ... that buyer or renter...." 42 U.S.C. § 3604(f)(1)(A). Nothing in the FHAA or its legislative history suggests that in enacting the FHAA, Congress intended to repeal § 202.

■ Repeals by implication are not favored in the law and are permitted only when the earlier and later statutes are irreconcilable. *See United States v. Spinelle,* 41 F.3d 1056, 1059 (6th Cir.1994) (citing *Morton v. Mancari,* 417 U.S. 535, 550, 94 S.Ct. 2474, 41 L.Ed.2d 290 (1974) ("In the absence of some affirmative showing of an intention to repeal, the only permissible justification for a repeal by implication is when the earlier and later statutes are irreconcilable.")); *see also Gallenstein v. United States,* 975 F.2d 286 (6th Cir.1992). Indeed, "when two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective." *Mancari,* 417 U.S. at 551, 94 S.Ct. 2474. *See also United States v. Borden Co.,* 308 U.S. 188, 198, 60 S.Ct. 182, 84 L.Ed. 181 (1939) ("The intention of the legislature to repeal must be clear and manifest.").

■ The issue in *Mancari* was whether a hiring preference explicitly created by statute was implicitly repealed by the 1972 Civil Rights Act. The Supreme Court held that it was not, stating:

the Indian preference statute is a specific provision applying to a very specific situation. The 1972 Act, on the other hand, is of general application. Where there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one, regardless of the priority of enactment.... When there are two acts upon the same subject, the rule is to give effect to both if possible.... The intention of the legis-

lature to repeal must be clear and manifest.

*Mancari,* 417 U.S. at 550–51, 94 S.Ct. 2474. As we noted in *Gallenstein,* repeals by implication, although disfavored in the law, are permitted under certain circumstances:

> (1) Where provisions in the two acts are in irreconcilable conflict, the later act to the extent of the conflict constitutes an implied repeal of the earlier one; and (2) If the later act covers the whole subject of the earlier one and is clearly intended as a substitute, it will operate similarly as a repeal of the earlier act. But, in either case, the intention of the Legislature to repeal must be clear and manifest.

*Gallenstein,* 975 F.2d at 291 (quoting *Radzanower v. Touche Ross & Co.,* 426 U.S. 148, 154, 96 S.Ct. 1989, 48 L.Ed.2d 540 (1976)) (internal quotation marks and citation omitted). It is evident that § 202 and the FHAA fall into neither of those categories. Although the two statutes touch upon the same subject, that is, ensuring the availability of housing for, among others, the handicapped, § 202 is a statute providing a funding mechanism and attendant standards for providing particular categories of such housing, while the FHAA is a general statute prohibiting discrimination in the provision of housing in general on the basis of, among other things, handicap. The FHAA is patently not intended as a substitute for § 202 and to the extent that there is any perceptible conflict between the provisions of the two statutes, it is not irreconcilable. In any event, there is no manifest and clear intention of Congress that the FHAA should repeal § 202.

## CONCLUSION

Because we have determined that HUD reasonably has interpreted § 202 to permit § 202 housing sponsors to continue to serve only some but not all classes of handicaps, and because nothing in the FHAA indicates Congress's intent to re-

peal any aspect of § 202, we hold that the district court properly concluded that the FHAA did not supersede the provisions of § 202 and that OLA's refusal to accept Beckert's application was not unlawful discrimination under the provisions of the FHAA. Accordingly, we AFFIRM the judgment of the district court.