RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 12a0344p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

UNITED STATES OF AMERICA,
                    *Plaintiff-Appellant*,

            *v.*                                              No. 10-5912

JAMES ALVIN CASTLEMAN,
                    *Defendant-Appellee.*

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 08-20420-002—Jon Phipps McCalla, Chief District Judge.

Decided and Filed: September 19, 2012

Before: MOORE, CLAY, and MCKEAGUE, Circuit Judges.

———————————

## COUNSEL

**ON BRIEF:** Daniel T. French, UNITED STATES ATTORNEY'S OFFICE, Memphis, Tennessee, for Appellant. Steven L. West, WEST & WEST, ATTORNEYS, Huntingdon, Tennessee, for Appellee.

CLAY, J., delivered the opinion of the court, in which MOORE, J., joined. MOORE, J. (pp. 15–16), delivered a separate concurring opinion. McKEAGUE, J. (pp. 17–23), delivered a separate dissenting opinion.

———————————

## OPINION

———————————

CLAY, Circuit Judge. The government appeals orders granting Defendant James Castleman's motion to dismiss two counts of his indictment, which charged Castleman with possession of a firearm after conviction for a misdemeanor crime of domestic violence in violation of 18 U.S.C. § 922(g)(9), and denying the government's motion for reconsideration. Because the district court correctly interpreted § 922(g)(9), we **AFFIRM** the district court's judgment.

1

## BACKGROUND

In 2001, Castleman pleaded guilty to one count of misdemeanor domestic assault in violation of Tennessee Code § 39-13-111(b).  That statute makes a defendant liable for a misdemeanor if he "commits an assault as defined in § 39-13-101 against a domestic abuse victim." Tenn. Code Ann. § 39-13-111(b).  Under § 39-13-101, a person is guilty of assault if he:

> (1)     Intentionally, knowingly or recklessly causes bodily injury to another;
>
> (2)     Intentionally or knowingly causes another to reasonably fear imminent bodily injury; or
>
> (3)     Intentionally or knowingly causes physical contact with another and a reasonable person would regard the contact as extremely offensive or provocative.

Tenn. Code Ann. § 39-13-101.  Castleman's 2001 indictment asserted that he "did intentionally or knowingly cause bodily injury to [the mother of his child]" in violation of § 39-13-111(b), to which he pleaded guilty on July 16, 2001.

Seven years later, federal agents discovered that Castleman and his wife were buying firearms from dealers and selling them on the black market.  Under the Castlemans' scheme, Castleman's wife purchased firearms, allegedly lied on federal firearms paperwork by stating that she was the actual buyer of the firearms, and turned the firearms over to her husband, who was legally prohibited from purchasing firearms because of his domestic assault conviction.  One of the firearms Castleman's wife allegedly purchased was recovered in a homicide investigation in Chicago, Illinois.  An investigation by the Bureau of Alcohol, Tobacco, Firearms & Explosives led agents to the Castlemans.

A grand jury indicted Castleman on two counts of possession of a firearm after being "convicted . . . of a misdemeanor crime of domestic violence," in violation of 18 U.S.C. § 922(g)(9).  Section 922(g)(9) states that:

> It shall be unlawful for any person . . . who has been convicted in any court of a *misdemeanor crime of domestic violence* . . . to ship or

transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(g)(9) (emphasis added).  Section 921(a)(33)(A) of Title 18 defines a "misdemeanor crime of domestic violence" to include any offense that:

(i) is a misdemeanor under Federal, State, or Tribal law; and

(ii) has, *as an element, the use or attempted use of physical force*, or the threatened use of a deadly weapon, committed by a current or former spouse, parent, or guardian of the victim, by a person with whom the victim shares a child in common, by a person who is cohabiting with or has cohabited with the victim as a spouse, parent, or guardian, or by a person similarly situated to a spouse, parent, or guardian of the victim[.]

18 U.S.C. § 921(a)(33)(A) (emphasis added).

On April 30, 2010, the district court dismissed the § 922(g)(9) counts in Castleman's indictment, reasoning that Castleman's misdemeanor domestic assault conviction did not qualify as a domestic violence crime requiring the "use or attempted use of physical force" as defined in 18 U.S.C. § 921(a)(33)(A)(ii).  Drawing upon cases from some of our sister circuits, the district court read § 921(a)(33)(A)(ii) to require "force in the sense of violent contact" instead of merely "force as a scientific concept relating to the movement of matter." (Order 5, R. 108.)  In adopting that construction of § 922(g)(9), the district court rejected the construction adopted by other circuits and urged by the government, under which a domestic assault conviction resulting from "subtle and indirect uses of physical force" would permit liability under § 922(g)(9). (Gov't Br. 18.)  Reasoning that Tennessee Code § 39-13-111(b)(1) would permit a conviction for assaultive conduct not involving physical contact, the court concluded that Castleman's conviction did not qualify as a predicate offense for purposes of § 922(g)(9). The government moved for reconsideration, which the district court denied, and then timely appealed.

**DISCUSSION**

## I.     Legal Framework

We review *de novo* a district court's decision of whether a prior conviction qualifies as a predicate offense under 18 U.S.C. § 922(g)(9). *See United States v. Gross*, 662 F.3d 393, 406 (6th Cir. 2011). In order to determine whether a conviction qualifies as a § 922(g)(9) predicate offense, we apply the "categorical approach" from *Taylor v. United States*, 495 U.S. 575, 600 (1990), in which we "look[] to the statutory definition of the offense and not the particular facts underlying the conviction." *United States v. Gibbs*, 626 F.3d 344, 352 (6th Cir. 2010); *see United States v. Hays*, 526 F.3d 674, 679 (10th Cir. 2008). If a defendant can violate the statute in a manner that involves the use or attempted use of physical force and in a manner that does not, we "may consider the indictment, guilty plea, or similar documents to determine whether they necessarily establish the nature of the prior conviction." *Id.* (citing *Shepard v. United States*, 544 U.S. 13, 26 (2005)).

## II.     Construction of 18 U.S.C. §§ 921(a)(33)(A) and 922(g)(9)

Like other federal appellate courts that have applied § 922(g)(9) to prior state convictions, we must determine the degree of force necessary for a misdemeanor domestic battery offense to qualify as a misdemeanor crime of domestic violence. *See, e.g.*, *Hays*, 526 F.3d at 677–79; *United States v. Nason*, 269 F.3d 10, 13–18 (1st Cir. 2001). The government argues that the district court incorrectly minimized the word "misdemeanor" in deciding whether Castleman's domestic assault conviction was "a misdemeanor crime of domestic violence" under § 922(g)(9). The touchstone of the government's argument is that § 922(g)(9)'s reference to misdemeanor domestic violence crimes triggers § 922(g)(9) liability for a defendant convicted of any generic, common-law assault and battery offense that involves no more than slight physical touching. By the government's reckoning, Congress intended § 922(g)(9) to reach the typical common law assault or battery offense, which generally permits liability for causing bodily injury "by subtle and indirect uses of physical force." (Gov't Br. 18.)

The government's argument is one of statutory interpretation.  In construing § 922(g)(9), we seek Congress' intent and refer first to the statute's plain language. *Chrysler Corp. v. C.I.R.*, 436 F.3d 644, 654 (6th Cir. 2006); *Herman v. Fabri-Centers of Amer., Inc.*, 308 F.3d 580, 585 (6th Cir. 2002).  We look to the statute's plain language with "the assumption that the ordinary meaning of that language accurately expresses the legislative purpose."  *Discount Tobacco City & Lottery, Inc. v. United States*, 674 F.3d 509, 549 (6th Cir. 2012) (quoting *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 194 (1985)).  We presume every word or phrase in the statute has independent effect.  *See, e.g.*, *United States v. Perry*, 360 F.3d 519, 537 (6th Cir. 2004).  If the statute is clear as written, the plain language is both our starting and ending point, making it unnecessary to delve into the statute's legislative history.  *United States v. Douglas*, 634 F.3d 852, 858 (6th Cir. 2011).

The government's argument is unpersuasive.  It overlooks the nearly identical language of § 921(a)(33)(A) and 18 U.S.C. §§ 16(a) and 924(e)(2)(B)(i).  Section 921(a)(33)(A)(ii) defines a "misdemeanor crime of domestic violence" as a crime that "has, as an element, the use or attempted use of physical force," against a victim with whom the defendant shares a domestic relationship.[1]  Like § 921(a)(33)(A)(ii), §§ 16(a) and 924(e)(2)(B)(i) use the phrase "physical force" to define "crime of violence" and "violent felony," respectively.  Section 16(a) defines a "crime of violence" in part as "an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another."  For its part, § 924(e)(2)(B)(i) defines a "violent felony" in part as a crime "that has as an element the use, attempted use, or threatened use of physical force."  By defining a "misdemeanor crime of domestic violence" to require "the use or attempted use of physical force," § 921(a)(33)(A)(ii) drops the reference to "threatened use" from §§ 16(a) and 924(e)(2)(B)(i) but otherwise tracks the language of §§ 16(a) and 924(e)(2)(B)(i).  The provisions' similarity supports

---

[1]Unlike § 924(e)(2)(B), § 921(a)(33)(A)(ii) does not contain a clause listing particular common law violent felonies ("burglary, arson, or extortion") or a residual clause ("otherwise involves conduct that presents a serious potential risk of physical injury to another").  Therefore, cases construing the residual clause in § 924(e)(2)(B)(ii) do not inform this appeal. *See Sykes v. United States*, 131 S. Ct. 2267 (2011); *United States v. Vanhook*, 640 F.3d 706 (6th Cir. 2011).

the inference that Congress intended them to capture offenses criminalizing identical degrees of force.

That inference gains strength in light of the order in which Congress adopted the statutes. Congress adopted §§ 921(a)(33)(A)(ii) and 922(g)(9) over a decade after it codified the "use of physical force" provisions in §§ 16(a) and 924(e)(2)(B)(i), and, as we explained above, Congress used nearly identical language. *See* Pub. L. No. 104-208, § 101(f), 110 Stat. 3009-369, 3009-372 (1996); Pub. L. No. 99-308, § 102, 100 Stat. 451 (1986); Pub. L. No. 98-473, § 1001(a), 98 Stat. 2136 (1984). We consider a statute with language modeled on that of an earlier statute to function as a legislative interpretation of the statute in question, and give the earlier statute "great weight in resolving any ambiguities and doubts" in the later one. *Beckert v. Our Lady of Angels Apartments, Inc.*, 192 F.3d 601, 606 (6th Cir. 1999) (quoting *United States v. Stewart*, 311 U.S. 60, 64–65 (1940)).

The Fourth Circuit recently came to the same conclusion in *United States v. White*, 606 F.3d 144, 153 (4th Cir. 2010). In *White*, the Fourth Circuit held that a Virginia domestic assault and battery statute is not a "misdemeanor crime of domestic violence" for purposes of § 921(a)(33)(A)(ii). *See id.* As a basis for its decision, the court relied on *United States v. Johnson*, 130 S. Ct. 1265 (2010). In *Johnson*, the Supreme Court held that a Florida battery statute that criminalized intentional striking, touching, and causing of bodily harm to another person was not a "violent felony" for purposes of § 924(e)(2)(B)(i). *Johnson*, 130 S. Ct. at 1269, 1273–74. In so holding, the Court interpreted the "physical force" requirement in that statute as "*violent* force . . . capable of causing physical pain or injury to another person" and "strong physical force." *Id.* at 1271.

The *White* court found *Johnson*'s reasoning in regard to § 924(e)(2)(B)(i) "compelling if not overwhelming" in its application to § 921(a)(33)(A)(ii). *White*, 606 F.3d at 153. The court explained that it saw "little, if any, distinction between the 'physical force' element in a 'crime of violence' in § 16 under *Leocal* [ *v. Ashcroft*, 543 U.S. 1, 9 (2004)], a 'violent felony' under § 924(e) in *Johnson* and a 'misdemeanor

crime of domestic violence' in § 922(g)(9)." *Id.* In the court's opinion, there was "no principled basis upon which to say a 'crime of domestic *violence*' would include *nonviolent* force such as offensive touching in a common law battery." *Id. White* is consistent with cases from other circuits concluding that a common-law, offensive-touching battery statute does not require sufficient force to be a misdemeanor crime of domestic violence. *See Hays*, 526 F.3d at 679 (holding that a Wyoming domestic battery statute that criminalized unlawful touching "in a rude, insolent, or angry manner" requires insufficient force to constitute a misdemeanor crime of domestic violence); *United States v. Belless*, 338 F.3d 1063, 1068 (9th Cir. 2003) (holding the same regarding the same Wyoming statute). We agree with these courts that the "physical force" provision of § 921(a)(33)(A)(ii) is identical to § 924(e)(2)(B)(i) in the degree of force it requires in a qualifying predicate offense.[2] And as a result, we conclude that the degree of force *Johnson* requires for a conviction under § 924(e)(2)(B)(i) is required of a misdemeanor crime of domestic violence.

The dissent finds fault in our decision to construe §§ 921(a)(33)(A)(ii) and 922(g)(9) in light of §§ 16(a) and 924(e)(2)(B)(i), and *Johnson*'s gloss on the latter statutes, because *Johnson* postdated the adoption of all the statutes in question. But this line of reason is hardly novel. For example, the Supreme Court used the identical line of argument in *Smith v. City of Jackson*, 544 U.S. 228, 234–38 (2005) (plurality opinion), in which the Court held that disparate-impact claims are available under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623, based in part on its previous interpretation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-2. Congress adopted Title VII in 1964, and it adopted the ADEA in 1967. *See Smith*, 544 U.S. at 233. Four years after Congress adopted the ADEA, the Supreme Court held in *Griggs v. Duke Power Company*, 401 U.S. 424, 433–34 (1971), that Title VII authorizes claims of employment discrimination based on race even when a plaintiff cannot show that the defendant employer acted with a discriminatory intent. A majority

---

[2]We also note that other federal courts have come to the opposite conclusion and held that an offense requiring only slight touching can qualify as a misdemeanor crime of domestic violence. *See United States v. Griffith*, 455 F.3d 1339, 1342 (11th Cir. 2006); *Nason*, 269 F.3d at 20.

of the Court explained that *Griggs* was "a precedent of compelling importance" when the Court considered the same issue with respect to the ADEA in 2005. *Smith*, 544 U.S. at 234 (plurality opinion); *see id.* at 243 (Scalia, J., concurring opinion) (expressing agreement with "all of the Court's reasoning" but finding the issue better left for agency interpretation). The Court's reasoning was consistent with its reading of Title VII and the ADEA in other cases. *See Smith*, 544 U.S. at 234 n.4 (citing *Oscar Mayer & Co. v. Evans*, 441 U.S. 750, 756 (1979), *Western Air Lines, Inc. v. Criswell*, 472 U.S. 400, 416 (1985), and *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985)).

As *Smith* makes clear, the Supreme Court (or other federal courts) need not have answered a particular question about a statute's meaning for the court to conclude that a construction of an earlier-adopted statute is "a precedent of compelling importance" to the interpretation of an identical, later-adopted statute. *Id*. at 234. Therefore, our argument is obviously not that Congress knew about *Johnson* when it adopted § 922(g)(9). Rather, the governing principle holds that Congress' decision to use identical language in writing the two statutes demonstrates its belief that the statutes share a similar meaning and, therefore, should be interpreted similarly. As we explained, that principle is not foreign to this Court. *See, e.g.*, *United States v. McAuliffe*, 490 F.3d 526, 532 n.3 (6th Cir. 2007); *Beckert*, 192 F.3d at 606.

The government resists this conclusion by emphasizing § 922(g)(9)'s reference to "misdemeanor" offenses, but the government asks us to put more weight on the term "misdemeanor" than Congress meant the term to bear. Had Congress intended the word "misdemeanor" to have the effect suggested by the government, then Congress would have had no need to modify "misdemeanor" with the phrase "crime of violence." Congress could simply have prohibited any person convicted of a "misdemeanor domestic assault or battery offense" from possessing a firearm. It chose not to do so.

Additionally, as the Supreme Court has explained in a different doctrinal context, the term "misdemeanor" "meant very different things in different common-law contexts" and was not defined in reference to the degree of force a misdemeanor offense required. *Atwater v. Lago Vista*, 532 U.S. 318, 328 n.2 (2001). "Misdemeanor" has an

independent meaning in the statute, but it has a different meaning than the government suggests. *See Perry*, 360 F.3d at 537. "Misdemeanor crime of domestic violence" is most naturally interpreted to mean any crime requiring strong and violent physical force, which happens to be a misdemeanor. Under this formulation, a misdemeanor crime of domestic violence is part of a subset of misdemeanor offenses which does not include all assault and battery offenses, but rather only those assault and battery offenses in which violent physical force is involved. The most natural inference from this reading is that Congress aimed to extend § 922(g)(9) to reach individuals who committed violent domestic conduct but who were charged only with a misdemeanor, perhaps as a result of a plea agreement.[3]

The dissent reads our opinion as having under-emphasized "the distinction between misdemeanors and felonies in the ACCA" and therefore as unnecessarily applying *Johnson*'s degree-of-force requirement to § 922(g)(9). The dissent seems to suggest that our application of *Johnson* to § 922(g)(9) flows from the belief that the distinction between misdemeanor and felony crimes is "insignificant." But the chain of reasoning flows in the opposite direction: any salient distinction between misdemeanors and felonies was, in our view, sufficiently insignificant to Congress that it wrote the statutes identically; thus, it is the similarity of the statutes that prohibits a domestic violence offense's status as a misdemeanor from controlling the question of whether the offense qualifies as a misdemeanor crime of domestic violence.

---

[3]In *Johnson*, the Supreme Court concluded that a battery offense was not a "violent felony," in part because the Court found it "unlikely that Congress would select a term of art defining 'violent felony' a phrase that the common law gave peculiar meaning only in its definition of a misdemeanor." 130 S. Ct. at 1271–72. According to government, this statement implies that the Court understands § 922(g)(9), with its limitation to "misdemeanor" offenses, to encompass all misdemeanor offenses attaching criminal liability to an offensive touching. The government reads the Court's statement to establish a broader proposition than it was intended. The Court's reference to the word "misdemeanor" was not aimed to demonstrate that a misdemeanor offense requiring less than violent force would trigger § 922(g)(9). Rather, the reference was aimed strictly to demonstrate why Congress would not use the word "felony" if it intended to cast liability to include an offense traditionally categorized as a misdemeanor. We do not read the Court's statement as an intended construction of § 922(g)(9).

Insofar as the Court's statement does bear on § 922(g)(9), it supports a proposition that we have applied here. At bottom, *Johnson*'s discussion of the common-law heritage of battery offenses reflected the established practice of presuming that Congress intended to incorporate the common-law meaning of a term absent evidence to the contrary. *See Info-Hold v. Sound Merchandising, Inc.*, 538 F.3d 448, 455–56 (6th Cir. 2008). Nothing about our decision transgresses that practice. The government asks us to do more than give due respect to the common-law history of "misdemeanor"; it asks us to read "misdemeanor" to swallow the remainder of § 922(g) and ignore the statute's remaining terms. We decline, because doing so would read the remaining language out of the statute.

Nor did *Johnson* treat the misdemeanor-felony distinction in the manner the dissents says it did. Though the Court in *Johnson* declined to use terms associated with misdemeanor offenses to define "violent felony," it does not follow that the passage in question indicates a practice by the Court of incorporating the misdemeanor-felony distinction directly into the ACCA and § 922(g)(9). Instead, the relevant portion of *Johnson* suggests that the misdemeanor-felony distinction is not a viable framework for determining the level of violence an offense must require to qualify as a violent felony. *See Johnson*, 130 S. Ct. at 1271 ("[T]he dividing line between misdemeanors and felonies has shifted over time"). The ACCA and § 922(g)(9), by contrast, is concerned with punishing defendants previously convicted of offenses characterized by a high degree of physical violence. And, as the Fourth Circuit explained in *White*, § 922(g)(9)'s reference to misdemeanor offenses "describes the punishment status of the predicate offense and has no bearing on the statutory mandate of a crime of violence." *White*, 606 F.3d at 153.

## III.     Categorical Analysis

Having determined the degree of force required in a misdemeanor crime of domestic violence, we turn to the question of whether Tennessee Code § 39-13-111(b) categorically qualifies as a misdemeanor crime of domestic violence. *See Gibbs*, 626 F.3d at 352. Our decision in *United States v. McMurray*, 653 F.3d 367 (6th Cir. 2011), requires us to conclude that it does not.

In *McMurray*, we held that a Tennessee aggravated assault conviction did not qualify as a predicate offense for purposes of 18 U.S.C. § 924(e)(2)(B)(i), because the statute criminalizes reckless conduct. 653 F.3d at 376. The *McMurray* defendant had been convicted of violating Tennessee's aggravated assault statute, which incorporates § 39-13-101. *Id.* at 372. We limited our inquiry to whether a conviction under "the serious-bodily-injury prong" of the aggravated assault statute satisfied the "use of physical force" provision in § 924(e)(2)(B)(i). *Id.* at 373. We relied on *Johnson*, 130 S. Ct. at 1270, *Leocal*, 543 U.S. at 9, and *United States v. Portela*, 469 F.3d 496 (6th Cir. 2006), in support of the proposition that a state offense making a defendant liable for

"reckless" conduct could not qualify as a predicate offense. *Id.* at 374. Since the Tennessee aggravated assault statute prohibits "recklessly . . . caus[ing] bodily injury to another," we reasoned that the defendant's aggravated assault conviction did not qualify as a violent felony under the "use of physical force" clause of § 924(e)(2)(B)(i). *Id.* at 372, 376; *see also United States v. Anderson*, — F.3d —, 2012 WL — (6th Cir. Sept. —, 2012) (concluding that an aggravated assault conviction qualified as a violent felony under § 924(e)(2)(B) where the statute required the defendant to knowingly cause serious physical harm to a victim).

Castleman pleaded guilty to an offense less severe than did the defendant in *McMurray*. Castleman pleaded guilty to misdemeanor domestic assault, for which a defendant is liable if he "commits an assault as defined in § 39-13-101 against a domestic abuse victim." Tenn. Code Ann.. § 39-13-111(b). *McMurray* held that the violation of a statute that builds on § 39-13-101 and makes it a crime to cause "serious bodily injury" does not require the use of violent force. It stands to reason, then, that the violation of a statute that also builds on § 39-13-101 but makes it a crime only to cause "bodily injury," serious or not, also does not require the use of violent force. Therefore, a defendant could violate Tennessee Code § 39-13-111(b) both in a manner that constitutes a "misdemeanor crime of domestic violence" and in a manner that does not.

This reasoning is consistent with *United States v. Anderson*, — F.3d —, 2012 WL — (6th Cir. Sept. —, 2012), in which we recently decided that a defendant's aggravated assault conviction qualified as a violent felony under § 924(e)(2)(B) because the underlying Ohio statute required the defendant to knowingly cause "serious physical harm to another." *Id.* at ¶ 31–32 (quoting Ohio Rev. Code Ann. § 2903.12(A)). Undertaking a categorical analysis of the Ohio statute, we concluded that "only by knowingly using force capable of causing physical pain or injury, *i.e.*, violent physical force," can a defendant cause serious physical injury to a victim. *Id.* at ¶ 32. And reasoning that "[t]he degree of injury has a 'logical relation to the use of physical force,'" our ruling was grounded in the fact that proof of a "serious" physical injury was

required to obtain a conviction and, in turn, to qualify the conviction as a violent felony. *Id.* at ¶ 34 (quoting *De Leon Castellanos v. Holder*, 652 F.3d 762, 766 (7th Cir. 2011)).

In this case, by contrast, the statute does not require proof of a serious physical injury. Rather, it requires proof of just some physical injury, regardless of how slight. Castleman could have caused a slight, nonserious physical injury with conduct that cannot be described as violent. Castleman may have been convicted for causing a minor injury such as a paper cut or a stubbed toe, in which he knowingly acted in a manner that caused a domestic relations bodily harm but did so using less than strong physical force. Therefore, Castleman's conviction under Tennessee Code § 39–11–101(b), in which he caused an unspecified bodily injury, is not a misdemeanor crime of domestic violence.

## IV.     Modified Categorical Analysis

Having concluded that Tennessee Code § 39-13-111(b) is not categorically a misdemeanor crime of domestic violence, we now consider whether Castleman's conviction qualifies as such given the proof of his conduct available to us. *Gibbs*, 626 F.3d at 352. Among the *Shepard* documents we are able to consider in making this inquiry is the indictment to which Castleman pleaded guilty. *Id.* (citing *Shepard*, 544 U.S. at 26). Castleman's indictment states tersely that he "did intentionally or knowingly cause bodily injury" to a woman with whom he had a domestic relationship in violation of § 39-13-111(b). The indictment does not specify the type of injury Castleman caused or its severity. The logic applicable to the categorical analysis of Castleman's conviction applies here as well, because Castleman's indictment adopts the language of the statute and does not specify the type or severity of injury he caused.

The government argues that it was impossible for Castleman to cause his victim any bodily injury without using the degree of force required under § 921(a)(33)(A)(ii). That argument is unpersuasive inasmuch as an individual can cause an unspecified bodily injury with nonviolent physical force. Tennessee law supports this proposition. Tennessee law defines "bodily injury" to include "a cut, abrasion, bruise, burn or disfigurement, physical pain or temporary illness or impairment of the function of a bodily member, organ or mental faculty." Tenn. Code Ann. § 39–11–106(a)(2). A

defendant himself need not necessarily use "*violent*" and "strong physical force" to cause a cut, an abrasion, or a bruise. *Johnson*, 130 S. Ct. at 1270. Rather, a defendant can cause one of these injuries with nonviolent force that either causes a slight injury or exposes the victim to bodily injury. As we explained, Castleman may have been convicted for causing a minor, nonserious physical injury, in which he caused the individual with whom he had a domestic relationship bodily harm, but did so using less than strong physical force. Therefore, Castleman's indictment does not provide a basis from which we can conclude that his domestic assault conviction entailed violent physical force.

Our decision is consistent with *United States v. Alexander*, 543 F.3d 819 (6th Cir. 2008), which the government incorrectly argues is in conflict with our conclusion regarding Castleman's domestic assault conviction. In *Alexander*, we held that a defendant's Michigan conviction for assaulting a police officer was a crime of violence for purposes of USSG § 4B1.2(a), in part because the statute required proof that the defendant caused the officer bodily injury. *Id.* at 823; *see McMurray*, 653 F.3d at 371 n.1 (explaining that USSG § 4B1.2(a) and § 924(e)(2)(B) are applied in conjunction with one another).

The government overlooks three important distinctions between *Alexander* and this case. First, we decided *Alexander* before the Supreme Court decided *Johnson*, so we must look to *Johnson* in deciding whether an offense requires the use or attempted use of physical force. Second, the Michigan statute at issue in *Alexander* required the government to prove that the defendant caused an officer a bodily injury "requiring medical attention or medical care." *Id.* (quoting M.C.L.A. § 750.81d(2)). Indeed, our conclusion that the defendant's crime was a violent felony was largely grounded on the fact that the conviction "require[d] causing an *actual* physical injury sufficiently severe to require medical care." *Id.* By contrast, Castleman may have pleaded guilty for doing no more than swatting or scratching the victim, *see State v. Wachtel*, No. M2003-00505-CCA-R3-CD, 2004 WL 784865, at *12 (Tenn. Ct. Crim. App. Apr. 13, 2004), and causing no more than a cut, abrasion, or bruise, none of which would have

required medical care.  Tenn. Code Ann. § 39–11–106(a)(2).  Third, in *Alexander* we considered the defendant's conviction on plain error review and could have only reversed the district court's judgment upon a finding of an obvious error that adversely affected both the defendant's substantial rights and the reputation and integrity of the judiciary.  *See id.* at 822 (quoting *United States v. Koeberlein*, 161 F.3d 946, 949 (6th Cir. 1998)). Here, by contrast, we undertake *de novo* review and agree with the district court's judgment.  Therefore, even after *Johnson*, our decision is consistent with *Alexander*.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's judgment.

---

**CONCURRENCE**

---

KAREN NELSON MOORE, Circuit Judge, concurring.  Although I agree with the majority's construction of 18 U.S.C. §§ 921(a)(33)(A) and 922(g)(9), and the decision to affirm the district court's judgment, I write separately to address the application of the modified-categorical analysis.  I agree that the force requirement for a misdemeanor crime of domestic violence is identical to that specified under the crime-of-violence statute and the ACCA.  In light of that conclusion, I believe this case presents a straightforward application of the Supreme Court's opinion in *Johnson v. United States*, 130 S. Ct. 1265 (2010), and of our subsequent decision in *United States v. McMurray*, 653 F.3d 367 (6th Cir. 2011).  In my view, this application also eschews drawing unnecessary comparisons between the seriousness of certain domestic-violence offenses and injuries.

At bottom, *McMurray* involved the same assault statute underlying the domestic-violence offense at issue here, which prohibits "[i]ntentionally, knowingly or recklessly caus[ing] bodily injury to another."  Tenn. Code Ann. § 39-13-101; *see also McMurray*, 653 F.3d at 372.  Because that statute criminalizes reckless conduct, it is not subject to the categorical approach.  *McMurray*, 653 F.3d at 375.  Thus, the question is whether Castleman, whose guilty plea was confined to "intentionally or knowingly caus[ing] bodily injury" to the mother of his child, R. 109-1 (State Ct. Indictment), meets the "use or attempted use of physical force" requirement for a misdemeanor crime of domestic violence under the modified-categorical approach.  *See* 18 U.S.C. 921(a)(33)(A).

Although some Sixth Circuit cases, such as *United States v. Alexander*, 543 F.3d 819, 823 (6th Cir. 2008), suggest that a bodily-injury requirement alone could be enough to qualify a statute as a crime of violence, this results-oriented approach does not square with the Supreme Court's analytical approach to the physical-force requirement for a violent felony.  In *Johnson*, the Court rejected the notion that "*any* intentional physical contact, no matter how slight" could qualify as a violent felony.  130 S. Ct. at 1270

(internal quotation marks omitted).  Instead, the Supreme Court defined 'physical force' as "*violent* force—that is, force *capable of causing* physical pain or injury to another person."  *Id.* at 1271 (second emphasis added).  It further noted that the term "'violent' . . . connotes a substantial degree of force."  *Id.*  Following this analysis, it is not enough to look only at the *result* of the defendant's conduct; instead, the focus must be on the nature of the force proscribed by the statute and whether the *conduct itself* necessarily involves violent force.

Applying this standard to the Tennessee assault statute, we have questioned whether an element specifying that a defendant "'cause[] serious bodily injury' necessarily requires the 'use of physical force'" for purposes of the ACCA.  *McMurray*, 653 F.3d at 374 n.6 (internal citations omitted).  Indeed, as we recognized in *McMurray*, the Tennessee assault statute "does not define 'serious bodily injury' to require any particular degree of contact."  *Id.*  Thus, "[a]lthough we might expect that someone who causes serious bodily injury to another did so with a strong physical force, the statute does not require it."  *Id.* (alteration in original); *cf. United States v. Villegas-Hernandez*, 486 F.3d 874, 879 (5th Cir. 2006) (evaluating a comparable bodily-injury requirement, which encompassed causing pain, illness, or physical impairment, and concluding that such injuries "could result from any of a number of acts [performed] without use of 'destructive or violent force'"), *cert. denied*, 549 U.S. 1245 (2007).  By extension, the requisite force under Tennessee's domestic-violence statute is similarly unspecified, and thus, even the modified-categorical approach does not bring Castleman's conviction within the confines of a misdemeanor crime of domestic violence.

———————

## DISSENT

———————

McKEAGUE, Circuit Judge, dissenting.  The majority relies upon *United States v. McMurray*, 653 F.3d 367 (6th Cir. 2011) to determine that Tennessee's assault statute does not have use or attempted use of physical force as an element. I dissented in *McMurray* because it was contrary to binding precedent. Likewise, I disagree with the outcome today for the reasons outlined in my *McMurray* dissent and established further below. I am bound to follow *McMurray* insofar as it is controlling. However, unlike the majority, I do not believe that *McMurry* controls the outcome in this case and I dissent insofar as the majority attempts to extend *McMurray's* reach.

I.

The majority finds the distinction between misdemeanors and felonies in the ACCA insignificant. In doing so, the majority ignores the fact that the Supreme Court's violent felony exception to the normal common law interpretation of "physical force" in *Johnson v. United States*, 130 S. Ct. 1265 (2010), was based on precisely that distinction.

In *Johnson*, the Supreme Court determined that the physical force element of the "violent felony" definition in the ACCA was not satisfied by mere offensive touching. Instead the Court interpreted the statute to require violent physical force. Here, the majority takes *Johnson's* "violent felony" standard and applies it to the ACCA's "misdemeanor crime of domestic violence" found at 18 U.S.C. § 921(a)(33)(A). In so doing, the majority misinterprets *Johnson*.

The *Johnson* Court held that "although a common-law term of art should be given its established common-law meaning," *Johnson*, 130 S. Ct. at 1270, the common law definition of "physical force" does not apply to violent felonies. This is because "context determines meaning and we do not force term-of-art definitions into contexts where they plainly do not fit and produce nonsense. Here we are interpreting the phrase

'physical force' as used in defining not the crime of battery, but rather the statutory category of 'violent felon[ies]'" *Id.* (internal citations omitted). However, the Court specifically stated that its holding did not apply to § 921(a)(33)(A): "We have interpreted the phrase 'physical force' only in the context of a statutory definition of "violent felony." We do not decide that the phrase has the same meaning in the context of defining a *misdemeanor* crime of domestic violence." *Id.* at 1273 (emphasis in original).

Just as using the mere touching misdemeanor standard of physical force to define violent felonies is misplaced and produces nonsense, so too does using the felony exception to define a misdemeanor. This creates an exception that swallows the rule. Several of our sister circuits have already recognized this. *See United States v. Griffith*, 455 F.3d 1339, 1345 (11th Cir. 2006) ("we do not feel compelled to reach a result at war with common sense"); *United States v. Booker*, 644 F.3d 12, 20-21 (1st Cir. 2011) *cert. denied*, 132 S. Ct. 1538, 182 L. Ed. 2d 175 (U.S. 2012) ("There are sound reasons to decline to interpret the two statutes in tandem. . . . the statutes address significantly different threats. Whereas the ACCA seeks to protect society at large from a diffuse risk of injury or fatality at the hands of armed, recidivist felons, § 922(g)(9) addresses an acute risk to an identifiable class of victims—those in a relationship with a perpetrator of domestic violence."). Although, as the majority points out, there are circuits which have adopted the *Johnson* felony standard for the misdemeanor provision, they err for the same reasons the majority errs today.

The majority supports its application of *Johnson* by noting that the ACCA's misdemeanor language at § 921(a)(33)(A) mirrors its violent felony language. However, the *Johnson* exception was not clarified until after both statutes were adopted. Despite its extended explanation, the majority thus pretends that Congress acted with full knowledge of the *Johnson* felony exception instead of with the common law understanding when writing § 921(a)(33)(A). Given the chronology of events, this cannot be the case.

In sum, *Johnson* rejected the argument that the misdemeanor standard should control the felony definition. By extension, the felony standard should not control the misdemeanor. Simply applying the narrow felony exception to the broader class of misdemeanor domestic assaults ignores the distinction central to *Johnson*.

II.

In determining that Tennessee's assault statute categorically lacks an element of "the use or attempted use of physical force," the majority relies exclusively on *McMurray*. As I explained in my dissent there, *McMurray* is out of step with binding precedent in this circuit. And "when a later decision of this court conflicts with one of our prior published decisions, we are still bound by the holding of the earlier case." *Darrah v. City of Oak Park*, 255 F.3d 301, 310 (6th Cir. 2001). I concur with the majority's categorical analysis out of respect for the panel rule. *United States v. Moody*, 206 F.3d 609, 615 (6th Cir. 2000).

Nevertheless, under a modified categorical analysis Castleman's prior domestic assault conviction satisfies the heightened *Johnson* standard and does not run afoul of *McMurray*. Castleman was convicted under Tenn. Code Ann. § 39-13-101 after he pled guilty to "intentionally or knowingly" causing bodily injury to the mother of his child. This Court's holding in *McMurray* "rest[ed] on the Tennessee statute's inclusion of *reckless* conduct," *McMurray*, 653 F.3d at 375 n.6 (emphasis added), and did not address intentionally or knowingly inflicting bodily injury. Today's decision extends *McMurray* from reckless infliction of bodily injury to intentional infliction of bodily injury. This outcome is contrary to our precedent, which holds that violent physical force is a necessary element to intentionally or knowingly inflicting bodily injury. *See United States v. Alexander*, 543 F.3d 819, 823 (6th Cir. 2008).[1]

---

[1]*Alexander* involved Michigan's statute regarding assaulting an officer:

Looking exclusively at the statutory definition of the offense, the plain language of this provision indicates that "causing bodily injury" is an element of the crime as defined by M.C.L.A. § 750.81 d(2). Violating this statute would therefore entail committing a crime of violence because the element of "causing bodily injury" involves both the "use of physical force against the person of another" (U.S.S.G. § 4B1.2(a)(1)) and "conduct that presents a serious potential risk of physical injury to another" (U.S.S.G. § 4B1.2(a)(2)). Indeed, a conviction under M.C.L.A. § 750.81d(2) requires more than simply a "risk"

The majority distinguishes *Alexander* because the Michigan statute necessitated injury "requiring medical attention or medical care." However, that is not the minimum standard in *Johnson*, which required only "force capable of causing physical pain or injury to another person." *Johnson*, 130 S. Ct. at 1271. Tennessee defines bodily injury as "include[ing] a cut, abrasion, bruise, burn or disfigurement, and physical pain or temporary illness or impairment of the function of a bodily member, organ, or mental faculty." Tenn. Code Ann. § 39-11-106. This by definition meets the *Johnson* standard of "physical pain or injury".

This Court's decision in *United States v. Gloss*, 661 F.3d 317, 318-19 (6th Cir. 2011) *cert. denied*, 132 S. Ct. 1777 (U.S. 2012), decided after both *McMurray* and *Johnson*, is also instructive. There this Circuit held that the ACCA standard for violent felony was satisfied by Tennessee's facilitation of armed robbery statute because:

> Any robbery . . . that causes serious bodily injury, falls under the first clause of the definition of violent felony, as it necessarily involves "the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i). It makes no difference that the defendant was not the person who committed the aggravated robbery. *See, e.g., United States v. Brown,* 550 F.3d 724, 729 (8th Cir.2008). All that matters is that *someone* did so, and that the defendant knowingly provided substantial assistance to that person.

*Id.* at 319 (emphasis in original). The rule in this Circuit after today's decision is that while the mere facilitation of another's crime resulting in serious bodily injury is necessarily a crime involving physical force, directly causing such bodily injury is not. Under this rule assaulting one's girlfriend does not trigger the ACCA—but providing assistance to a third party who robs one's girlfriend, during which she gets assaulted, does. This defies common sense.

---

of physical injury; a conviction requires causing an *actual* physical injury sufficiently severe to require medical care. If Alexander was in fact convicted under that statute, he would have necessarily committed a crime of violence.

*Alexander*, 543 F.3d at 823 (emphasis in original).

Much of the confusion results from the rewording of common law elements in the Model Penal Code.[2] As the First Circuit observed, the apparent disconnect between the ACCA's focus on the act and the state statute's (like Tennessee's) focus on the result can be rectified once their differing perspectives are taken into account. *See United States v. Nason*, 269 F.3d 10, 19-20 (1st Cir. 2001). Recognizing that Congress's use of common law and the state's adoption of the Model Penal Code both address the same crime makes the ACCA easier to interpret.[3]

The solution is to hold that knowingly or intentionally causing bodily injury necessitates use of physical force. That would solve the apparent contradiction between *Alexander* and *Gloss*, which addressed intentional or knowing infliction of bodily injury, and *McMurray*, which was limited to reckless infliction of bodily injury. Other circuits have already adopted this rule. The First Circuit, for example, in evaluating Maine's assault statute (which is almost identical to Tennessee's) has found physical force a necessary element: "Common sense supplies the missing piece of the puzzle: to cause *physical* injury, force necessarily must be *physical* in nature. Accordingly, physical force is a formal element of assault under the bodily injury branch of the Maine statute." *United States v. Nason*, 269 F.3d 10, 20 (1st Cir. 2001) (emphasis in original). This conclusion survived *Johnson. United States v. Booker*, 644 F.3d 12, 21 (1st Cir. 2011) *cert. denied*, 132 S. Ct. 1538, 182 L. Ed. 2d 175 (U.S. 2012). Likewise, the Eighth

---

[2]Tennessee's assault statute follows the Model Penal Code, which defines simple assault in part as "attempt[ing] to cause or purposely, knowingly or recklessly causes[ing] bodily injury to another." Model Penal Code § 211.1. Prior to codification Tennessee's common law definition of assault, similar to the ACCA, focused on the act rather than the result. "An assault is an attempt or offer to do a personal violence to another. It is an inchoate violence, with the present means of carrying the intent into effect." *Richels v. State*, 33 Tenn. 606, 608 (1854).

[3]"Violent felonies" under the ACCA and "crimes of violence" under the sentencing guidelines are analyzed the same way. *United States v. Gibbs*, 626 F.3d 344, 352 n. 6 (6th Cir. 2010); also recognized in *McMurray*, 653 F.3d at 371 n.1. With regard to the sentencing guidelines: "the offense for which the defendant was convicted must fall within the generic definition of that crime, which is found by surveying how the crime is described across jurisdictions, as well as consulting sources such as the Model Penal Code. . . . We have recognized the Model Penal Code definition of aggravated assault as the generic definition for the purpose of deciding whether a crime with that label is a crime of violence, at least in states which have merged the crimes of assault and battery." *United States v. Rede-Mendez*, 680 F.3d 552, 556-57 (6th Cir. 2012) (internal citations omitted). That the Model Penal Code's definition of "aggravated assault" (reflected in Tennessee's statute) is a "violent crime" for purposes of the sentencing guidelines but not—as a result of *McMurray*—a "violent felony" for the ACCA further shows that *McMurray* is out of step with this Circuit's larger precedent.

Circuit found that bodily injury is predicated on physical acts. "Smith was charged . . . for committing an act intended to cause pain, injury, or offensive or insulting physical contact . . . . As such, Smith was charged, and pleaded guilty to, an offense with an element of physical force within the meaning of 18 U.S.C.A. § 921(a)(33)(A)(ii)." *United States v. Smith*, 171 F.3d 617, 621 (8th Cir. 1999).

Today's decision separates the Model Penal Code's element of intentionally or knowingly causing bodily injury from the ACCA's element of physical force. This extension of *McMurray* has the effect of making the "misdemeanor crime of domestic violence" provision of the ACCA a dead letter in Tennessee, as well as any other state using the Model Penal Code's definition of assault to punish domestic abusers.

The Supreme Court has already rejected an interpretation of § 921(a)(33)(A) that would make the ACCA a "'dead letter' in some two-thirds of the States from the very beginning." *United States v. Hayes*, 555 U.S. 415, 427 (2009). In a different context, the Court noted:

> Practical considerations strongly support our reading of § 921(a)(33)(A)'s language. Existing felon-in-possession laws, Congress recognized, were not keeping firearms out of the hands of domestic abusers, because "many people who engage in serious spousal or child abuse ultimately are not charged with or convicted of felonies." 142 Cong. Rec. 22985 (1996) (statement of Sen. Lautenberg). By extending the federal firearm prohibition to persons convicted of "misdemeanor crime[s] of domestic violence," proponents of § 922(g)(9) sought to "close this dangerous loophole."

*Id*. at 22986.

> Construing § 922(g)(9) to exclude the domestic abuser convicted under a generic use-of-force statute (one that does not designate a domestic relationship as an element of the offense) would frustrate Congress' manifest purpose.

*Id.* at 426-27. In *Hayes*, the Court started from the premise that "domestic abusers were (and are) routinely prosecuted under generally applicable assault or battery laws," *Id.* at 427, and sought to interpret § 921(a)(33)(A) in keeping with that custom. The majority

fails to take into account this "manifest purpose" of Congress and reopens a dangerous loophole for domestic offenders. The result—that those convicted of intentional domestic assault in Tennessee may still possess firearms—frustrates Congress's manifest purpose in adopting § 921(a)(33)(A).

For these reasons I disagree with the reasoning of the majority today and dissent from the majority's attempt to extend *McMurray*'s reach.